Commonwealth, Appellant, *v.* Youngblood.

Argued May 25, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

*James D. Crawford,* Deputy District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellant.

*Wilbur Bourne Ruthrauff,* with him *Spencer Ervin, Jr.,* and *Tate and Ervin,* for appellee.

OPINION BY MR. JUSTICE POMEROY, July 2, 1973:

This is an appeal by the Commonwealth from an order of the Court of Common Pleas granting a new trial to the defendant, Kenneth Youngblood. It presents, inter alia, the question whether a court *en banc* considering a convicted defendant's motion for a new trial must include the pre-trial suppression judge among its members and have before it the notes of testimony from the suppression hearing. On the merits there is also presented the question whether the court *en banc* erred in overruling the suppression judge's decision that a confession was voluntarily made and admissible in evidence.

The history of the case is as follows: On April 14, 1969, the defendant, accompanied by his sister Hattie

Bryant, surrendered himself to the Philadelphia police. After several hours in custody the defendant made a statement in which he admitted shooting Hattie's husband, Sidney Bryant. Subsequently, the defendant was charged with murder, to which he pleaded not guilty. Youngblood filed a motion to suppress the confession and after a full hearing the suppression judge denied the motion and ruled the statement admissible. The case then went to trial before a judge and jury. As permissible under Pennsylvania practice, the voluntariness of the confession was again challenged at trial and that issue was submitted to the jury. By its verdict of second degree murder, the jury unquestionably accepted the confession as voluntary. Post-trial motions were filed and argued before a court *en banc* consisting of the trial judge and two other judges, none of whom was the suppression judge. The court *en banc* ordered a new trial, ruling unanimously that the defendant had not intelligently waived his right to counsel as required by *Miranda v. Arizona*, 384 U.S. 436 (1966), and that therefore the confession should not have been admitted into evidence. This appeal followed.

At the outset, we note that the right of the Commonwealth to appeal from adverse decisions in criminal cases is limited to pure questions of law. *Commonwealth v. Tabb*, 417 Pa. 13, 207 A. 2d 884 (1965). As the three issues raised herein are in that category, the Commonwealth's appeal is proper. Deciding as we do, however, that the first and third questions are without merit, and that the second has been waived, we will affirm the grant of a new trial by the court *en banc*.

## I

The Commonwealth's first contention is that the court *en banc* as it was constituted did not have the power to overrule the finding of the suppression judge that the confession was admissible. We recently held in

*Commonwealth v. Ware,* 438 Pa. 517, 522-3, 265 A. 2d 790 (1970), that while a court *en banc* cannot overrule the findings of fact of the suppression judge, it can reverse on the basis of legal conclusions drawn from those facts. To allow any other result would undermine the function of the court *en banc.* For a more in-depth discussion of the role of the court *en banc* in this situation, see Judge JACOBS' opinion for the Superior Court in *Commonwealth v. Bonser,* 215 Pa. Superior Ct. 452, 258 A. 2d 675 (1969).

The Commonwealth argues, however, that in the instant case the court *en banc* made its own finding of fact, in direct conflict with a finding of the suppression judge. We disagree. The following facts were found by the suppression judge and were accepted by the court *en banc*: Upon arrival at the police station at approximately 12:20 a.m. on April 14, the defendant was given the standard *Miranda* warnings. At that time he said he did not wish to say anything until he had talked with his sister. After the sister had been brought into the room, the warnings were re-read to the defendant. To the question "Do you want either to talk with a lawyer at this time or to have a lawyer with you while we ask you questions?" the defendant replied, "Yes, I want a lawyer". Questioning then stopped. The sister left at 2:28 a.m., saying that she would be back with an attorney later that morning. Twelve minutes later, a detective entered the interrogation room where the defendant had been left alone and began to fill out an "intelligence summary" consisting of the defendant's name, age, address, employment, and other background information of general nature. After answering two or three questions on the form, the defendant told the detective he wanted to recount everything that had happened. He stated that the only reason he had not done so sooner was in order to satisfy his sister, who was concerned and tired, so that she would return home

and rest. Without a further reading of the *Miranda* warnings, Youngblood then proceeded to give a full inculpatory account of the killing of his brother-in-law.

The Commonwealth concedes that up to this point the findings of the suppression judge and the court *en banc* coincide. The court *en banc,* however, also considered the fact that the defendant was a mental defective. Admittedly, the suppression judge made no specific finding in this regard. Therefore, while it is impossible to say that the court *en banc* overruled the suppression judge, it does appear to have made a new or additional finding of fact. We think the finding was justified in this case. At the suppression hearing the Commonwealth itself introduced the report of a court-appointed psychiatrist. The summary section of this evaluation contained the following conclusion: "Mr. Youngblood would appear to represent a Personality Disorder, Schizoid Personality which means that he appears to fantasize and withdraw and establish few meaningful relationships in life. He, furthermore, is a young man of mildly defective intelligence." In addition, there was presented to the suppression judge uncontradicted testimony that the defendant had progressed through the third grade when he was removed to a special school for the mentally retarded. On this basis alone, i.e., accepting as true the Commonwealth's evidence on mental capacity and without considering the testimony of a defense psychiatrist that the defendant suffered from organic brain damage and was a schizophrenic personality, the position taken by the court *en banc* was altogether justified. Its function was analogous to that performed by a court in reviewing the sufficiency of the evidence, and it concluded that as a matter of law the evidence was not sufficient to find voluntariness.[1] Moreover, as will appear later in this

---

[1] It is apparent from reviewing the testimony of the hearing on post-trial motions that the court *en banc* realized that its scope

opinion, the determination of mental infirmity was unnecessary to the court's ultimate invalidation of appellant's confession

## II

The Commonwealth's second contention is that it was improper for the court *en banc* to overrule the suppression judge because (1) that judge was not a member of the court *en banc,* and (2) the court *en banc* rendered its decision without having before it the transcribed notes of testimony from the suppression hearing.[2]

The contention of appellant that error was committed in failing to have the suppression hearing judge sit on the court *en banc* we find to be without merit.

As to the failure of the court *en banc* to await transcription of the notes of testimony, any error arising

---

of review was limited to legal issues. The following colloquy took place between Judge (now Justice) NIX, a member of the court, and counsel for the defendant: "JUDGE NIX: Just a moment. Aren't we in this position: At this point you already have a court making an initial determination as to admissibility? MR. DE FINO: That's correct, sir. JUDGE NIX: So that the factual issues were resolved adverse to your position by the Court in reaching that conclusion? MR. DE FINO: That is correct, sir. JUDGE NIX: Then you had a jury who also had a right to review on the factual question who also decided against your version of how the confession was obtained, at least insofar as to whether or not it was coercive. At this point you have to take the evidence—most favorable evidence to the Commonwealth in review and then we would have to accept the testimony of the detective that he voluntarily made this statement. It seems to me that the only real issue that you have at this point is whether or not the evidence on the record, the total evidence on the record, justifies that he could make an intelligent waiver."

2 The court *en banc* rendered its decision on October 30, 1970. The Commonwealth then realized that the notes from the suppression hearing had not yet been transcribed. The stenographer was notified, and delivered the transcribed notes one or two days thereafter.

therefrom is harmless.[3] In the first place, the court *en banc* had the equivalent of a complete transcript. The Commonwealth concedes that with one exception the same evidence introduced at the suppression hearing was also introduced at trial. The missing piece of evidence was the psychiatric report of the court-appointed expert, referred to above. The summary of this report, however, was read to the court *en banc* by defense counsel. The Commonwealth argues that this procedure was unsatisfactory because counsel improperly characterized the entire report as being in substantial agreement with that of the defendant's expert. The faulty characterization, however, was of minimal importance, attested to by the District Attorney's failure to object at the time.[4] In the second place, the legal question which the court *en banc* was asked to decide is the same one which has been raised by the Commonwealth in this Court and which will be considered in Part III, infra. We have been provided with the entire record and can correct any errors which might have been made below.

## III

The Commonwealth urges, finally, that the court *en banc* erroneously concluded as a matter of law, based upon the facts as recited above, that the defendant did not knowingly and intelligently waive his right to counsel. In *Miranda v. Arizona,* 384 U.S. 436, 473-75 (1966), the Supreme Court of the United States issued the

[3] While this matter was also not raised below, it cannot now be considered waived. Realistically, we recognize that the very nature of the objection makes it impossible for it to be raised until after the fact.

[4] The Commonwealth seeks to excuse this failure on the ground that the assistant district attorney assigned to post-trial motions was a different assistant district attorney from the one who had earlier handled the motion to suppress. It is obvious that such an explanation is not satisfactory.

following mandate: "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. . . . If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. Illinois, 378 U.S. 478, 490, note 14, 12 L. Ed. 2d 977, 986, 84 S. Ct. 1758." With equal clarity, however, the Court held that "[t]here is no requirement that the police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." 384 U.S. at 478.

The Commonwealth contends that the interrogation in this case *did* cease immediately after the defendant invoked his rights to remain silent and to the presence of an attorney; that the defendant "volunteered" his confession; and that new warnings were not required before the "volunteered statement". The taking of an intelligence summary is not, *per se,* custodial interrogation. We have recently so held in *Commonwealth v. DuVal,* 453 Pa. 205, 307 A. 2d 229 (1973) where we concluded that the blurting out of a confession while an officer was filling out an arrest report was volunteered and not the product of interrogation. In that case we went on to say: "We recognize the legitimate need of the police and of prison authorities to process even those persons who have claimed their rights under Miranda and hence we cannot and do not proscribe all police-prisoner contact or conversation. We have recog-

nized, however, that subtle pressures—later said to have been 'administrative'—can be applied to encourage or elicit incriminating statements, and we will look carefully to determine whether Miranda rights have been violated. See Commonwealth v. Mercier, 451 Pa. 211, 302 A. 2d 337 (1973); Commonwealth v. Hamilton, 445 Pa. 292, 285 A. 2d 172 (1971)."

In this case Youngblood, a 15-year-old youth "of mildly defective intelligence", had been in police custody for several hours and was the prime suspect in the murder of his brother-in-law. He had already once elected to remain silent and to have his sister seek to find an attorney. When he suddenly changed his mind and exhibited a willingness to talk, the police should have been alert to the danger of accepting a statement without making as certain as possible that the suspect understood his rights and wished to waive them. Unlike *DuVal*, there was here no sudden blurting out of a confession: there was a statement of willingness to give a statement, and then interrogation by the officer. Whatever positive inference concerning appellant's comprehension of his rights can be drawn from his initial choice to remain silent and to seek the services of an attorney is undermined by the complete change of face which came only a few minutes later. While it is true that the reversal of defendant's position was initiated by him, his explanation that his sister was tired and that he only wanted her to go home hardly suffices as proof of a knowing and intelligent waiver of constitutional rights. In concluding that the Commonwealth has not sustained its burden as to voluntariness, see *Commonwealth v. Nathan*, 445 Pa. 470, 477, 285 A. 2d 175 (1971), we adopt the reasoning of the Court of Appeals for the Seventh Circuit, which held in an analogous situation that ". . . the defendant's refusal to sign the waiver form, followed by an apparent willingness to allow further questioning, should have alerted

the agents that he was assuming seemingly contradictory positions with respect to his submission to interrogation. Instead of accepting the defendant's equivocal invitation, the agents should have inquired further of him before continuing the questioning to determine whether his apparent change of position was the product of intelligence and understanding or of ignorance and confusion. However, no further inquiry took place. In the absence of such an inquiry, we are compelled to conclude that the defendant's . . . responses to the questions asked him were not made after a knowing and intelligent waiver of his rights." *United States v. Nielsen,* 392 F. 2d 849, 853 (7th Cir. 1968). See also *United States v. Jenkins,* 440 F. 2d 574 (7th Cir. 1971).

Our position today is not inconsistent with prior decisions of this Court. In three recent cases we have held that a defendant's initial exercise of *Miranda* rights did not foreclose a later waiver. In each instance, however, the waiver was preceded by a complete reexplanation of those rights, conspicuously absent in this case. *Commonwealth v. Grandison,* 449 Pa. 231, 296 A. 2d 730 (1972); *Commonwealth v. Jefferson,* 445 Pa. 1, 281 A. 2d 852 (1971); *Commonwealth v. Franklin,* 438 Pa. 411, 265 A. 2d 361 (1970). See also *Commonwealth v. Mercier,* 451 Pa. 211, 302 A. 2d 337 (1973). In *Commonwealth v. Simala,* 434 Pa. 219, 226, 252 A. 2d 575 (1969), we concluded that "volunteered" statements are "designed to permit the use by the prosecution of a confession that is given by an accused without any prompting, *before warnings can be given"*. (Emphasis in original omitted; emphasis here added.) Explaining the last phrase in a footnote, we stated "Even where an accused blurts out a confession, Miranda warnings at least should be necessary before any questions are asked that do anything more than clarify statements already made." 434 Pa. at 226, n.2. On the particular facts of this case, we believe the court *en banc* was correct in

determining as a matter of law that failure of the police to so act renders the confession inadmissible.

The order granting a new trial is affirmed.

Mr. Justice ROBERTS and Mr. Justice MANDERINO concur in the result.

Mr. Justice NIX took no part in the consideration or decision of this case.