## Commonwealth, Appellant, *v.* Lord.

Submitted June 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Michael F. Henry, David Richman, Bonnie B. Leadbetter, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellant.

*Richard Lunenfeld,* for appellee.

OPINION BY PRICE, J., September 23, 1974:

This is an appeal by the Commonwealth from an order dismissing the prosecution of the appellee on the basis that the nolle pros. entered in this case, having once been entered, cannot be removed.

Appellee, Kenneth Lord, was arrested on December 3, 1969, as the result of a fire of the Simkins Box Company in Philadelphia on November 28, 1969, and was indicted on January 1, 1970, on two counts: arson and firing personal property. The lower court, on April 15, 1970, revoked appellee's bail and committed him for a psychiatric examination to determine competency to stand trial. As a result of the psychiatric examination on April 17, 1970, appellee was found competent to stand trial. However, after five continuances, the Commonwealth was still unprepared to go to trial, and on June 1, 1970, moved that all charges be nolle prossed. At the same time, the Commonwealth also petitioned the Court to commit the appellee to the Philadelphia State Hospital at Byberry pursuant to the provisions providing for civil court commitment under the Mental Health Act, Act of October 20, 1966, Special Sess. No. 3, P. L. 96, art. IV, §406 (50 P.S. §4406). The appellee and his father consented to the commitment order.

Appellee was arrested pursuant to a bench warrant issued on November 5, 1971, based on the violation of the order of civil commitment following appellee's unauthorized departure from the Philadelphia State Hospital on August 7, 1970. On March 9, 1972, the lower court removed the nolle pros. over defense counsel's objections and appellee was tried on April 17, 1972. Appellee waived a jury trial and was found guilty by the trial judge of arson and firing of personal property.

Subsequently, appellee filed timely motions for a new trial and in arrest of judgment contending that he was denied due process of law and effective assistance of counsel because his attorney acquiesced in and offered no challenge to the Commonwealth's lifting of the original nolle pros. entered on June 1, 1970. The motions were argued before the court en banc, which by opinion, dated February 8, 1973, ruled that "[b]y entering a nolle prosse and permitting the defendant to commit himself under Section 406 [of the Mental Health Act,] the Commonwealth effectively relinquished its right to seek further prosecution," and ordered a new trial for appellee. The Commonwealth filed a petition for reconsideration of the order on February 23, 1973, which was denied on March 16, 1973. The Commonwealth did not appeal the denial of this petition or the original order of the court en banc.

On August 9, 1973, the lower court held a hearing and subsequently ordered the dismissal of the indictments and the discharge of the appellee. The Commonwealth appealed from this order on August 30, 1973.

In its appeal, the Commonwealth contends that the court en banc erred in ordering a new trial, and, alternatively, that the lower court erred in dismissing the indictments and discharging the appellee.

### I.

Initially, this court must consider the propriety of an appeal by the Commonwealth at this time of the

order of the court en banc. The order of the court en banc was promulgated on February 8, 1973, and a direct appeal to this court raising an issue as to the validity of that order was not taken until six months later, August 30, 1973.[1]

In taking an appeal, the appellant must comply with all applicable statutory requirements. *Massachusetts Bonding & Insurance Company v. Johnston & Harder, Inc.*, 330 Pa. 336, 199 A. 216 (1938). Pursuant to the Act of July 31, 1970, P. L. 673, No. 223, art V, §502 (17 P.S. §211.502(a)) an appeal to this court "from any order shall be filed within thirty days of its entry." Time limitations for the taking of appeals have been strictly construed by Pennsylvania courts in the past. See, e.g., *Commonwealth v. Peters*, 178 Pa. Superior Ct. 82, 113 A. 2d 327 (1955); *Commonwealth v. Schneiderman*, 162 Pa. Superior Ct. 461, 58 A. 2d 196 (1948). It is also recognized that "[w]hen an Act of Assembly fixes the time within which an appeal may be taken, courts have no power to extend it or to allow an appeal nunc pro tunc, except where there is a showing of fraud or its equivalent." *Commonwealth v. Wright*, 187 Pa. Superior Ct. 39, 42, 142 A. 2d 336, 337 (1958). See also *Ifft v. Hunter*, 202 Pa. Superior Ct. 487, 489, 198 A. 2d 436, 437 (1964) ("we [Superior Court] must take notice of the defect [untimely appeal] and there is no room for the exercise of discretion on our part"); *Commonwealth v. Yorktowne Paper Mills, Inc.*, 419 Pa. 363, 214 A. 2d 203 (1965) (cases cited therein); *Commonwealth ex rel. Nicosia v. Nicosia*, 184 Pa. Superior Ct. 440, 136 A. 2d 135 (1957).

---

[1] The Commonwealth filed a petition for reconsideration of the February 8, 1973, order on February 23, 1973. However, a motion for reargument or rehearing does not extend the time for taking an appeal. See, e.g., *Smith v. Jones*, 369 Pa. 13, 85 A. 2d 23 (1951).

The Commonwealth has alleged no "fraud or its equivalent" in defense of its failure to make a timely appeal of the February 8, 1973, order of the court en banc; therefore, consideration of the validity of this order is not properly before this Court.[2]

## II.

Although we will not consider the validity of the February 8, 1973, order of the court en banc, we must examine the decision in order to resolve the second issue raised by the Commonwealth. The Commonwealth contends the dismissal of the indictments following a hearing on August 9, 1973, by the lower court, was in error as it did not properly carry out the court en banc's order for a new trial.

At argument, the Commonwealth contended that the nolle pros. was properly lifted on March 9, 1972, because it had been originally conditioned upon the defendant's and his parent's informed consent to civil commitment.[3] As further evidence, the Commonwealth submitted that the committing judge had committed

[2] The Commonwealth could have appealed the decision by the court en banc since the issues involved constituted pure questions of law. *Commonwealth v. Youngblood*, 453 Pa. 225, 307 A. 2d 922 (1973) ; *Commonwealth v. Tabb*, 417 Pa. 13, 207 A. 2d 884 (1965).

[3] A nolle prosequi is a voluntary withdrawal by a district attorney of present proceedings of a particular bill. *Commonwealth v. Shields*, 89 Pa. Superior Ct. 266 (1926). Upon application of the attorney for the Commonwealth, the court may, in open court, order a nolle prosequi notwithstanding the objection of any person. See Pennsylvania Rules of Criminal Procedure, Rule 314. Although a nolle prosequi cannot be entered by the court of its own motion, *Commonwealth v. Shields, supra*, it cannot be entered or removed without the assent of the proper court in writing first had and obtained. *Commonwealth ex rel. Thor v. Ashe*, 138 Pa. Superior Ct. 222, 11 A. 2d 173 (1940) ; Act of March 31, 1860, P. L. 427, §29, (19 P.S. §492). The grant or refusal of a nolle prosequi lies within the sound discretion of the court. *Commonwealth v. DiPasquale*, 431 Pa. 536, 246 A. 2d 430 (1968). An agreement to enter a nolle

defendant to the Philadelphia State Hospital on the condition that he was to "receive treatment for mental illness as an inpatient until further order of the Court." The Commonwealth also argued that the agreement to nolle pros. the charges in exchange for the psychiatric treatment through civil commitment was not in derogation of any of defendant's rights and constituted a condition precedent to the continued vitality of the nolle pros. Therefore, since the defendant had left the State Hospital illegally, the prosecution was properly reinstated.

In response, the defendant argued that the election of the nolle pros. by the Commonwealth was final and binding, and that if the Commonwealth had wished to keep its option of prosecution open the proper procedure would have been under Sections 407 and 408 of the Mental Health Act.[4]

---

prosequi on certain conditions may be properly repudiated on a failure of the defendant to carry out the agreement. *Commonwealth v. Shields, supra.*

[4] These sections provide that a defendant may be confined in the proper mental institute pending trial without prejudicing the Commonwealth's right to trial once the mental disability is cured or disappears.

Section 407 provides in pertinent part:

(a) Whenever a person who has been charged with crime and released on bail is or becomes mentally disabled so that his admission or commitment to a facility is necessary, proceedings may be instituted under the appropriate provisions of this act, in the same manner as if he had not been so charged with crime.

. . . .

Act of Oct. 20, 1966, Special Sess. No. 3, P. L. 96, art. IV, §407 (50 P.S. §4407).

Section 408 provides in pertinent part:

(a) Whenever a person who has been charged with crime is detained in a penal or correctional institution and he is believed to be mentally disabled so that his commitment to a facility is necessary, a petition for such commitment may be presented to the court of the county where he stands charged with crime. . . .

. . . .

Furthermore, the defendant claimed that he was denied due process of law and effective assistance of counsel because his attorney acquiesced in and offered no challenge to the Commonwealth's lifting of the original nolle pros. entered on June 1, 1970.

In its opinion the court en banc agreed with the defendant's position and noted that the Commonwealth's "attempt to exploit its right to reinstate prosecution without the consent of the defendant . . . was a circumvention of the defendant's right to a full hearing on the issue of his mental state." Although the defendant had been found mentally competent to stand trial at least once before,[5] because of the defendant's

———

(d) After consideration of the petition and all evidence presented, the court may order the commitment of such person to a designated facility if satisfied that the person is mentally disabled and that his commitment is necessary. . . .

(e) Whenever a commitment is ordered, the director shall detain the person so committed within the facility, provided, however, that if it is determined that partial hospitalization or outpatient care would be beneficial to the person so committed, such may be permitted by the court upon application therefor by the director and upon such terms and conditions as the court may direct, including the entry of bail to secure such person's return to the facility or his appearance.

Act of Oct. 20, 1966, Special Sess. No. 3, P. L. 96, art. IV, §408 (50 P.S. §4408).

See also Section 409 which provides in pertinent part:

(a) Whenever a person who has been charged with crime is committed in accordance with either section 407 or section 408 of this act, the criminal proceedings against him shall be stayed for the duration of commitment, provided however, that the Attorney for the Commonwealth may submit indictments to the grand jury involving such charge. [Footnote omitted]

. . . .

Act of Oct. 20, 1966, Special Sess. No. 3, P. L. 96, art. IV, §409 (50 P.S. §4409).

[5] Defendant was examined on April 17, 1970, and was found competent to stand trial. Defendant was also examined on June 1, 1973 (after the April 17, 1972 trial) and found competent to stand trial.

civil commitment, the Commonwealth should have availed itself of Section 409(c) of the Mental Health Act[6] and before the trial of April 17, 1972, had a due process hearing on the issue of changes in defendant's mental status rendering him potentially competent to stand trial. The court en banc also noted that the fact that defendant's attorney failed to raise the competency issue at the April 17, 1972, trial and his insistence to the trial judge that his client was fully competent "compounded the constitutional error and sealed his client's doom."

In conclusion, the court en banc stated that: "[b]y entering a nolle prosse and permitting the defendant to commit himself under Section 406 the Commonwealth effectively relinquished its right to seek further prosecution[;]" and that "[d]ue process of law demands that the defendant have a full and fair hearing on the issue of his competence to stand trial and on the effect of the nolle prosse on the Commonwealth's pursuit of prosecution after its election of a Section 406 commitment, and its abandonment of the clear and manageable statutory alternative which would have preserved both the Commonwealth's and the defendant's interests in fundamental justice."

The court en banc then granted defendant a new trial.

On August 9, 1973, a hearing was held at which time the lower court considered the opinion of the

---

[6] Section 409 provides in pertinent part:

. . . .

(c) The Attorney for the Commonwealth may also at any time during the period of commitment, petition the court for a rule upon the director of the facility where such person is committed to show cause why the commitment should not be revoked and the person so committed brought to trial if the interests of justice require prosecution of such person.

Act of Oct. 20, 1966, Special Sess. No. 3, P. L. 96, art. IV, §409 (50 P.S. §4409).

court en banc and as a result dismissed the indictments against defendant. The order was based on what the lower court construed to be the mandate of the court en banc. Essentially, the hearing judge ruled, after argument, that the court en banc had found that the Commonwealth had "effectively relinquished its right to seek further prosecution," and, therefore, to proceed with a further trial would in effect constitute a reversal by a single judge of a judicial finding of the full court. See *Commonwealth v. Youngblood*, 453 Pa. 225, 307 A. 2d 922 (1973); *Commonwealth v. Ware*, 438 Pa. 517, 265 A. 2d 790 (1970); *Commonwealth v. Bonser*, 215 Pa. Superior Ct. 452, 258 A. 2d 675 (1969).

In response, the Commonwealth argued at the hearing that only a new trial would properly effectuate the order of the court en banc and noted that a motion for a new trial had been before the court en banc and they had not so ruled.[7]

We find that the hearing judge properly dismissed the indictments against the defendant. From a reading of the opinion of the court en banc, the only issue to be reviewed by a hearing court is whether or not the Commonwealth had relinquished its right to further prosecution. This was to be accomplished by two full and fair hearings: one on competence to stand trial, and

---

[7] Confusion on this point was evident during the hearing: "THE COURT: Well, if you [the Commonwealth] read that, the opinion told you what they are in essence saying: that the Commonwealth relinquished its right to further prosecution in this matter by entering the nol-pros. What we could possibly say is that they envisioned just this type of procedure would occur: that the defendant would now move to dismiss the indictment [NT 4] . . . They [court en banc] made certain findings and then a decision. In view of their findings, the Commonwealth relinquished its right to further prosecute this matter. I am in total agreement with that. The only thing I'm saying is that, under the circumstances, the remedy was not a motion for new trial but a motion in arrest of the judgment [NT 8]."

the other on the effect of the nolle pros. on the Commonwealth's pursuit of prosecution. However, a holding in favor of the defendant in either of these hearings would obviate the need for a new trial. In any event, a new trial would be proper only if the Commonwealth prevailed at both hearings.

At the August 9, 1973, hearing, the hearing judge sufficiently considered the effect of the nolle pros. in the Commonwealth's right to further prosecution, and found that the court en banc's findings necessitated the dismissal of the indictments. The hearing was properly not an evidentiary hearing, since the issue presented was purely a legal one and was correctly determined in accordance with the opinion of the court en banc. Therefore, we agree with the hearing judge's determination that a reading of the opinion of the court en banc in its entirety indicated the holding that the procedures followed by the Commonwealth precluded further prosecution in this case.[8]

The order of the court below dismissing the indictments is affirmed.

---

[8] The hearing judge also noted in his opinion of January 17, 1974, that "the proper procedure to challenge the decision by the Court en Banc would have been a direct appeal to the Superior Court, since the issues involved constituted pure questions of law." See n. 2, *supra*.