Commonwealth *v.* Bliss, Appellant.

348

Submitted March 10, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Richard D. Walker*, Public Defender, for appellant.

*Marion E. MacIntyre*, Deputy District Attorney, and *LeRoy S. Zimmerman*, District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., March 29, 1976:

The record in this case suggests that appellant's trial counsel and his appellate counsel may both have been incompetent. We have concluded that on the particular facts presented the best solution is to quash the appeal, with a suggestion to the lower court to appoint new counsel to represent appellant and to determine whether any further proceedings are warranted.

I

On September 12, 1973, the grand jury of Dauphin County returned six bills of indictment against appellant. Bills 1648 and 1649 charged appellant with having raped and committed sodomy on a 16-year-old-girl. Bill 1688 charged him with having raped a young woman who was in her 10th month of pregnancy. Bills 1709 and 1710 charged him with having kidnapped and committed involuntary deviate sexual intercourse upon an eight-year-old girl. Bill 1711 charged him with aggravated assault and battery of a 13-year-old girl. And Bill 1754 charged him with having indecently exposed himself to two teen-aged girls.

On September 26, 1973, appellant pleaded not guilty to all of these bills, and on January 31, 1974, the bills were called for trial.

After summarizing the charges, the Deputy District Attorney stated to the court that on Bill 1711 the Commonwealth wished to move to dismiss the charge of aggravated assault and battery and instead to charge only simple assault. The district attorney went on to state that it was his understanding that appellant would then plead guilty to all of the bills.

Appellant was represented by counsel from the Dauphin County Public Defender's office. Counsel stated that appellant did "agree to plead guilty to the charges. with one exception. A question was raised concerning No. 1710 ...." When the court asked what the question was, the following colloquy ensued:

"MR. GOOD: Under the law of the definition of kidnapping is a person doing a kidnapping is the unlawful removing of another a substantial distance or a substantial period. [*Sic*] The definition of what's substantial under this new code has not specifically been defined and the distance we do not feel was a substantial distance.

THE COURT: What section is that?

MR. GOOD: 2901, Your Honor. It involves another charge which Mr. Bliss is pleading guilty to and at my insistence it's connected with the involuntary sexual deviate intercourse.

THE COURT: Which is what?

MR. GOOD: Which he is pleading guilty to out of the same incident, and there is also a kidnapping charge involved in there.

MR. DISSINGER: Your Honor, very briefly, the facts I think will reveal the young girl upon whom the involuntary sexual deviate intercourse was performed was taken from her bicycle into the car of the defendant and transported approximately a mile.

THE COURT: All right. Well, we are not going to argue that right now. Is your client going to plead guilty to that or not guilty to the kidnapping charge? You have to make a decision.

MR. GOOD: We will plead not guilty and waive jury trial and let you decide it at this point.

THE COURT: I'm going to conduct the colloquy with the defendant." (NT 3-4.)[1]

---

1. Kidnapping is defined as follows:

"(a) *Offense defined.* — A person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:

(1) To hold for ransom or reward, or as a shield or hostage.

(2) To facilitate commission of any felony or flight

After this colloquy, the court accepted appellant's pleas of guilty and his waiver of a jury trial on the kidnapping charge, and heard testimony. Generally, the procedure followed was that the investigating officer assigned to the particular case testified as to what had happened, with the victim confining her testimony to identifying appellant as the person who had attacked her; on Bill 1711, the assault charge, the victim described the incident. In addition, a confession was admitted into evidence. Appellant did not testify. The only witness called by his counsel was one of the investigating officers, who testified that when confessing, appellant had "impressed me with the fact that he was very, very truthful." This officer also agreed with appellant's counsel that appellant had "express[ed] the desire that he did need help and wished to obtain it."

Upon conclusion of the testimony, the court revoked bail and ordered a presentence report. When the district attorney reminded the court the "one outstanding matter is the indictment to the kidnapping charge," the court stated:

"THE COURT: Well, I feel that the defendant is guilty of that charge, and I so find him. It seems to me that he did take [the child] a substantial distance to facilitate the commission of a felony and held her for the purpose.

---

thereafter.

(3) To inflict bodily injury on or to terrorize the victim or another.

(4) To interfere with the performance by public officials of any governmental or political function.

(b) *Grading.* — Kidnapping is a felony of the first degree. A removal or confinement is unlawful within the meaning of this section if it is accomplished by force, threat or deception, or, in the case of a person who is under the age of 14 years or incompetent, if it is accomplished without the consent of a parent, guardian or other person responsible for general supervision of his welfare." Act of Dec. 6, 1972, P.L. 1482, No. 334, §1, eff. June 6, 1973, 18 Pa.C.S. §2901.

Mr. Bliss, you pled not guilty to kidnapping and I found you guilty of it. Under the law you have a right to file a motion for new trial or a motion in arrest of judgment if you want to appeal that decision. If you care to do that, you must do it within seven days. If you don't file an appeal within seven days, you may not thereafter file an appeal on the decision of the kidnapping charge.

You are entitled to counsel. Mr. Good will continue to represent you should you desire to appeal, and I'm sure he'll talk to you about whether or not you should pursue the matter any further. All right." (NT 44.)

Appellant did not file any post-trial motions.

On March 28, 1974, appellant was brought before the court for sentencing. In total, the sentences imposed were for 22-1/2 years to 50 years, $5,000 in fines, and costs.[2]

There was no objection to any of the sentences. The pre-sentence investigation report included a summary from the Harrisburg State Hospital suggesting "a schizoid character disorder." The summary said "[s]taff felt that [appellant's] behavior demonstrated a desire to remain hospitalized to escape the consequences of his charges and that he was not sincere in wanting psychiatric help. However, it is the staff's feeling that outpatient psychiatric care should be part of the court recommendation as he is so easily led." No witness was called at the sentencing proceeding on appellant's behalf.

---

2. Bill 1709 (involuntary deviate sexual intercourse), 10 to 20 years, fine of $1,000, and costs; Bill 1710 (kidnapping), 10 to 20 years, fine of $1,000, and costs, consecutive to the sentence on Bill 1709; bill 1688 (rape), 2-1/2 to 10 years, fine of $1,000, and costs, consecutive to the sentence on Bill 1710; Bill 1648 (rape), 7-1/2 to 15 years, fine of $1,000, and costs, concurrent with the sentence on Bill 1709; Bill 1649 (sodomy), 5 to 10 years, fine of $1,000, and costs, concurrent with the sentence on Bill 1709; Bill 1754 (indecent exposure), costs, sentence suspended; and Bill 1711 (assault and battery), costs, sentence suspended.

On April 9, 1974, appellant, acting without counsel, filed a petition under the Post Conviction Hearing Act.[3] On the first page of the petition he identified all of the bills and charges against him. In paragraph 3 of the petition he recited his total sentence of 22-1/2 to 50 years and noted that he had been tried by a judge without a jury, and also had pleaded guilty. In paragraph 4 he stated that he was eligible for relief because he had been denied his constitutional right to representation by competent counsel. In paragraph 5 of the petition, he stated:

"Counsel is considered incompetency because after reading Penna. Crim. Law Crim. Proced. Manuel, 1973, pg. 92, para 2. -sec 6, Sentence for certain Sex Offenses. Petitioner now realises he had the right to have an opportunity to be heard, to be confronted with the witnesses against him, to have the witnesses against him, to have the right to cross examine, and to offer evidence of his own. Com. v. Dooley, 209 Pa. Super. 519, 1967. My court appointed counsel did not advire me of these rights previous to my entering a plea of guilty. [Sic]"

In paragraph 6 of the petition, he stated:

"It is to my understanding that for the better administration of Justice and the more efficient punishment, treatment and rehabilitation of people convicted of crimes such as mine, and it is the opinion of this court that I, if at large, constitute a threat of bodily harm to members of the public, or am considered mentally ill, in lien of sentence now imposed, for each crime, this court may sentence me to a state institution for an indefinite term having a minimum of one day and a maximum of my natural life. Act of Jan. 8, 1952, P.L. 1851.[4] [Sic.]"

---

3. Act of Jan. 25, 1966, P.L. (1965) 1580, §1, eff. March 1, 1966, 19 P.S. §1180-1, et seq. (Supp. 1975).

4. 19 P.S. §1166.

On April 24, 1974, the lower court denied appellant's post-conviction petition without appointing counsel and without a hearing. The court accompanied its order with a memorandum. The court stated that "[t]he only allegation in the petition" was regarding incompetent counsel; the court did not refer to the allegation in paragraph 6 of the petition regarding the sentences imposed. The court then stated that "[p]rior to accepting defendant's plea an extensive colloquy was conducted .... We have reviewed ... the colloquy and find that all of the areas of complaint listed by defendant were covered .... We were satisfied both then and now that defendant was fully advised ... and voluntarily and knowingly elected to plead guilty." The court concluded by stating: that "defendant had good reason to plead guilty since he was clearly and positively identified as the perpetrator of a series of sexual offenses that can only be categorized as atrocities;" that the only witness called by defendant was "to show defendant's contriteness and how fully and openly he admitted the commission of these crimes;" and that while "defendant is understandably aggrieved by the sentence of twenty-two and one-half to fifty years ... he could have received a maximum sentence of ninety-nine years ...." The court did not refer to the fact that as to the kidnapping charge appellant had not pleaded guilty but had been tried by the court; nor did the court refer to defense counsel's argument at the trial regarding that charge.

On June 24, 1974, appellant's counsel filed with this court a Petition for Leave to File Appeal without Payment of the Filing Fee. The petition was granted and, also on June 24, a writ of certiorari issued. The writ recites that an appeal has been taken "from the Judgments of Sentence dated March 28, 1974 [and then identifies all of the bills of indictment]." There is no reference to appellant's petition for post-conviction relief, nor to the lower court's order denying that petition.

In due course a brief for appellant was filed with us.

Counsel on the brief is from the Dauphin County Public Defender's office but is not the same person as was appellant's trial counsel. The brief is captioned "Appeal from Memorandum and Order of the Lower Court." Presumably this refers to the memorandum and order of April 24, 1974, denying appellant's petition for post-conviction relief. In the brief, however, there is no reference to the allegations made in that petition, *i.e.*, that appellant's trial counsel had been incompetent in not advising appellant of his rights, and that appellant should have been sentenced under the Act of January 8, 1952, *supra*. Instead, the brief only argues that appellant should not have been convicted and sentenced for kidnapping because that offense had merged with the offense of involuntary deviate sexual intercourse.

In response the Commonwealth has favored us with a very able brief. First the Commonwealth argues that appellant is not entitled to argue the merger issue because that "issue [was not] raised at trial or by way of post-trial motions." Commonwealth's Brief at 3. Next the Commonwealth proceeds to discuss the merger issue on its merits, prefacing its discussion with the following statement.

> "While there does not seem to be any authority in the Commonwealth directly of point with this fact situation, the issue has been raised in other jurisdictions where there are two generally opposing views. One view is that once there is a seizure or detention of a person, with any accompanying movement of the person, this is sufficient to constitute the separate crime of kidnapping; the reasoning being that the fact of forcible removal constitutes the crime of kidnapping. The other view is that such seizure or detention is not sufficient to constitute a separate crime, for the movements are merely incidental [sic] to the commission of another offense so long as the movements do not substantially increase the risk of danger beyond that necessarily present in the

356

commission of the other offense. Annot. 43 A.L.R. 3rd 699 (1972)." *Id.* at 3-4.

## II

Several issues emerge from the foregoing procedural morass.

-A-

The first issue concerns the failure of appellant's counsel to file any post-trial motions.

As the Commonwealth recognizes, the merger issue is a substantial one. There are, however, several obstacles that appellant must overcome before we may consider it.

It is not clear that the issue was raised by appellant's trial counsel. Counsel's colloquy with the trial judge has been quoted in full, *ante*, at page 350. Counsel's remarks do not make it plain whether he was arguing merger, or that the statute was unconstitutionally vague in failing to define "substantial distance," or that the evidence would not prove that the victim had been moved a "substantial distance." Although the court replied to counsel, "... we are not going to argue that right now," which suggests that later argument was anticipated, in fact there was no later argument. Nor are we helped by the manner in which the testimony on the kidnapping and involuntary deviate sexual intercourse charges was presented. From counsel's colloquy one might expect that competent evidence of the distance that the victim had been moved would have been insisted upon. However, the only witness was a police detective, called by the Commonwealth, whose testimony - none of it objected to - appears to be largely hearsay. He himself found the child's bicycle, and measured the distance from it to a maintenance building; he said the distance was at least 1.2 miles. Otherwise, however, it appears that he got his information from talking to the child and one Milton Appleyard, neither of whom was called as a witness; it

was stipulated by counsel that the victim "would identify [appellant]."[5]

Assuming that the issue of merger was raised at trial, it is not clear why no post-trial motions were filed. "[A]s a rule, issues not raised by way of post-verdict motions in the trial court will not be considered on appeal." *Commonwealth v. Carter*, 463 Pa. 310, 313, 344 A.2d 846, 848 (1975). *Accord, Commonwealth v. Reid*, 458 Pa. 357, 326 A.2d 267 (1974). Thus, the issue of merger has been held waived where it was not raised in post-trial motions or at time of sentencing. *Commonwealth v. Gadson*, 234 Pa. Superior Ct. 648, 651-652, 341 A.2d 189, 192 (1975); *Commonwealth v. Tisdale*, 233 Pa. Superior Ct. 77, 80, 334 A.2d 722, 724 (1975).

Since the failure to file post-trial motions will therefore severely limit the scope of an appeal, and in practical effect may be equivalent to not filing any appeal at all, the failure must be the result of a voluntary and intelligent decision by a defendant to waive his right to file such motions. *Commonwealth v. Carter, supra.* To ensure this result, paragraphs (b) and (c) of Pa.R.Crim.P. 1123 require the trial judge to follow certain procedures:

"(b) If the defendant agrees on the record, the post-verdict motions may be made orally at the conclusion of the trial. The defendant may also within the seven (7)-day period on the record voluntarily and understandingly waive the filing of post-verdict motions. Prior to the acceptance of such waiver the trial judge shall, pursuant to paragraph (c) of this Rule, advise the defendant on the record that his waiving of post-verdict motions shall

---

5. Appellant's confession contained the following with regard to this victim:

"Q. Where did you go after you pulled her into the car?

"A. We went around the corner a couple of blocks to a deserted road."

preclude his raising on appeal any issues which might have been raised in such motions.

"(c) Upon the finding of guilt, the trial judge shall advise the defendant on the record: (1) of his right to file post-verdict motions and of his right to the assistance of counsel in the filing of such motions and on appeal of any issues raised therein; (2) of the time within which he must do so as set forth in paragraph (a); and (3) that only the grounds contained in such motions may be raised on appeal."

The procedure followed by the trial judge in the present case appears in the quotation from the record *ante*, at pages 351-352. As will be observed, it there appears that although the judge did give appellant the first two of the three warnings required by Rule 1123(c), he did not give the third. It also appears that the judge stated, incorrectly, that "[i]f you don't file an appeal within seven days, you may not thereafter file an appeal ..." And finally, it appears that no response was elicited by the judge, either from appellant or his counsel.

In *Commonwealth v. Wardell*, 232 Pa. Superior Ct. 468, 469, 334 A.2d 746, 747 (1975), it is said: "[W]here ... the record is silent on why post-trial motions were not filed, the record must be remanded for an evidentiary hearing to determine whether appellant 'intentionally and intelligently relinquished' his right 'to the assistance of counsel in the critical task of taking and perfecting an appeal ... [which of necessity includes] counsel's assistance in the filing of post trial motions.' *Commonwealth v. Grillo*, [208 Pa. Superior Ct. 444,] at 448, 222 A.2d [427,] at 429 [1966]."

This relief, however, is not available to appellant. In *Wardell* a petition had been filed with the lower court for leave to file post-trial motions *nunc pro tunc;* one of the matters before us was the defendant's appeal from the lower court's order denying that petition. Here, no such petition has been filed. In addition, appellant's counsel has not asked us to remand the record for an

evidentiary hearing on whether appellant voluntarily and intelligently waived his right to file post-trial motions. Indeed, counsel has given no indication that he recognizes the significance of the fact that no such motions were filed. In *Commonwealth v. Jones*, 460 Pa. 713, 716, 334 A.2d 601, 602 (1975), where post-trial motions were filed but then withdrawn, the Supreme Court stated: "The issue whether appellant's decision [to withdraw the motions] was voluntary and made with the competent advice of counsel has not been raised on appeal, and therefore we do not consider it."

-B-

The second issue concerns appellant's petition for post-conviction relief, which was dismissed without appointing counsel[6] and without a hearing.

"[I]n this jurisdiction a first post-conviction hearing petition should not be dismissed where the petitioner is indigent and has requested counsel, without affording him representation in that proceeding ...." *Commonwealth v. Fiero*, 462 Pa. 409, 412, 341 A.2d 448, 449 (1975); *accord, Commonwealth v. Johnson*, 431 Pa. 522, 532-533 n.7, 246 A.2d 345, 351 n.7 (1968). In *Commonwealth v. Jones*, 236 Pa. Superior Ct. 145, 146-147, 344 A.2d 504, 505 (1975), this Court said: "The law in Pennsylvania clearly states that dismissal of a PCHA petition, without appointing counsel, is permitted *only* when a previous PCHA petition involving the same issue or issues has been finally determined adversely to the petitioner and petitioner was represented by counsel in

---

6. In the PCHA petition appellant checked the appropriate boxes at #11 to indicate his indigent status. At #12, however, he checked both (A) and (A)(1), which state he is without counsel and requests a court-appointed representative, and (B), which states he has a lawyer. At (B) appellant listed the name of his attorney at trial. However, it is clear from the petition and the court order that appellant was in fact acting without an attorney.

the proceeding relating to such previous PCHA petition. See Pa.R.Crim.P., Rules 1503 and 1504; *Commonwealth v. Schmidt*, 436 Pa. 139, 259 A.2d 460 (1969); *Commonwealth v. Mitchell*, 427 Pa. 395, 235 A.2d 148 (1967); *Commonwealth v. Richardson*, 426 Pa. 419, 233 A.2d 183 (1967), and *Commonwealth v. Hoffman*, 426 Pa. 226, 232 A.2d 623 (1967)." (Emphasis in the original).

It is also the law in Pennsylvania that if a petition alleges facts that if proved would entitle the petitioner to relief, the petitioner should be granted an evidentiary hearing. Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, §9, 19 P.S. §1180-9; *Commonwealth v. Via*, 455 Pa. 373, 316 A.2d 895 (1974); *Commonwealth v. Kravitz*, 441 Pa. 79, 269 A.2d 912 (1970); *Commonwealth v. Johnson*, 431 Pa. 522, 246 A.2d 345 (1968); *Commonwealth v. Conley*, 232 Pa. Superior Ct. 432, 335 A.2d 721 (1975); *Commonwealth v. Van Hillsman*, 229 Pa. Superior Ct. 467, 323 A.2d 35 (1974). This rule has been applied where the issue involved is the effectiveness of counsel, *Commonwealth v. Musser*, 463 Pa. 85, 343 A.2d 354 (1975) (per curiam); *Commonwealth v. Via, supra; Commonwealth v. Conley, supra; Commonwealth v. Johnson*, 231 Pa. Superior Ct. 30, 331 A.2d 750 (1974), and obstruction of the right to appeal, *Commonwealth v. Davis*, 433 Pa. 267, 249 A.2d 766 (1969); *Commonwealth v. Conley, supra.*

We do not intimate an opinion on whether in the present case the lower court erred in denying appellant's petition without appointing counsel and without a hearing.[7] The point is, that since no post-trial motions had been filed, whether the lower court had so erred was the only issue appealable to this court. In spite of this fact, nothing is said about that issue in the brief that appellant's counsel has filed with us. Counsel notes that

---

7. The rule as to when a hearing is required is not without exception; *see, e.g., Commonwealth v. Via, supra* at 375, 316 A.2d at 896.

appellant filed a petition for post-conviction relief, and that the petition was denied without the appointment of counsel or a hearing; but that is all.

-C-

The third issue concerns the nature of the appeal before us.

On the one hand, the writ of certiorari recites that an appeal has been taken from the judgments of sentence on all of the bills of indictment, both those to which appellant pleaded guilty, and the kidnapping bill, on which he was found guilty. The argument contained in appellant's brief to us is at least in part consistent with the writ, in that it attacks the conviction and sentence for kidnapping; there is no attack as regards the other bills. On the other hand, the brief is inconsistent with the writ in that it is entitled "Appeal from Memorandum and Order of the Lower Court," which can only refer to the lower court's denial of appellant's petition for post-conviction relief.[8]

We have concluded that however the appeal is regarded, it must be quashed. As has been mentioned, the sentences were imposed on March 28, 1974, and the order denying the petition for post-conviction relief was

---

8. At the close of trial, the court indicated in advising appellant of his right to appeal that his trial counsel would continue to represent him. (NT 44.) The continued representation on appeal by the same counsel as at trial is an important factor in applying the rules of *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975), as to when a claim of ineffectiveness of counsel may be raised by way of a PCHA petition rather than on direct appeal. In applying these rules, however, it is important to consider *Commonwealth v. Via, supra.* There, the Supreme Court treated trial counsel and PCHA counsel as in effect the same where both were from the same Public Defender's office. The Court therefore refused to hold that the issue of effectiveness of trial counsel was waived for failure to be raised in the first counseled PCHA petition. "The law will not assume that counsel has advised his client of his inadequacies or those of his associates." *Id.* at 377, 316 A.2d at 898.

filed on April 24, 1974. Whether the appeal is from the judgments of sentence or the order, it had to be filed within thirty days. Act of July 31, 1970, P.L. 673, No. 223, art. V, §502, 17 P.S. §211.502; Post Conviction Hearing Act, *supra*, §11, 19 P.S. §1180-11. In fact the appeal was not filed until June 24, 1974. An untimely appeal is a defect that we must take notice of, for it goes to our jurisdiction. *Commonwealth v. Lord*, 230 Pa. Superior Ct. 96, 326 A.2d 455 (1974).

We expect, however, that the lower court will appoint new counsel other than one from the Dauphin County Public Defender's office to represent appellant.[9] We do not intimate an opinion on whether appellant has been denied any of his rights; it may be that he has not been. The record raises so many questions, however, that further inquiry is warranted.[10]

The appeal is quashed.

JACOBS, J., concurs in the result.

CONCURRING OPINION BY PRICE, J.:

I would simply quash the appeal as untimely.

---

9. *See, Commonwealth v. Via, supra,* in which a similar remedy was ordered.

10. *See, Commonwealth v. Via, supra,* and *Commonwealth v. Fiero, supra,* each involving multiple PCHA proceedings in cases in which no post-trial motions were filed nor direct appeal taken and ultimately raising questions of effectiveness of trial counsel and original PCHA counsel. Also, in *Commonwealth v. Dancer, supra,* the court noted that the question of effectiveness of direct appeal counsel could be challenged in a PCHA proceeding. 460 Pa. at 101 n. 4, 331 A.2d at 438 n. 4.

In *Fiero,* the Supreme Court noted that the rule requiring appointment of counsel on a first PCHA petition at the request of an indigent "[clearly] ... is not limited to the mere naming of an attorney to represent an accused, but also envisions that counsel so appointed shall have the opportunity *and in fact discharge the responsibilities required by* his representation." 462 Pa. at 413, 341 A.2d at 450 (emphasis added).