378 Pa. 359 (1954)
Commonwealth ex rel. Shumaker, Appellant,
v.
New York & Pennsylvania Company, Inc.
Supreme Court of Pennsylvania.
Argued May 24, 1954.
June 28, 1954.
*360 Before STERN, C.J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.
Harry Alan Sherman, with him Clark H. Painter and Merle E. Wiser, District Attorneys, William D. Henning, Francis X. McCulloch and Herbert R. Carroll, for appellants.
*361 Lewis H. Van Dusen, Jr., with him John Ames Ballard, Henry S. Drinker and Robert J. Trace, Deputy Attorney General, for appellees.
OPINION BY MR. JUSTICE CHIDSEY, June 28, 1954:
On December 19, 1949 an action in equity was filed in the Common Pleas Court of Dauphin County in the name of the Commonwealth on relation of Clyde S. Shumaker, District Attorney of Butler County, and W.P. Geary, District Attorney of Clarion County, five persons individually and as officers of the Allegheny County Sportsmen's League, Inc., a nonprofit corporation, and by that corporation, against the New York & Pennsylvania Company, Inc., and R.M. Jones, its manager, together with five individuals averred in the bill to be members of the Sanitary Water Board. The complaint sought to restrain as a public nuisance the alleged pollution of the Clarion River by the corporate defendant, and was brought under the provisions of Section 601 of the Pure Streams Act of June 22, 1937, P.L. 1987, 35 PS § 691.1 et seq.
Preliminary objections were filed to the bill and the corporate defendant also filed a petition under the Act of March 5, 1925, P.L. 23, challenging the court's jurisdiction of the subject matter. The court held it was without jurisdiction, but on appeal to this Court (367 Pa. 40) we reversed and remitted with procedendo. Argument on the preliminary objections was then heard by the lower court, one of which was that the Allegheny County Sportsmen's League and its officers were improperly joined as parties to the complaint. On October 8, 1951 the court sustained this objection and ordered that the Sportsmen's League and its officers be dismissed as parties plaintiff.
An attempted appeal from the foregoing ruling of the Dauphin County Court was quashed by this Court *362 which also dismissed subsequent motions and petitions to reinstate the appeal. Accordingly, the ruling that the Sportsmen's League and its officers had no status in the case became final and binding. Defendants' other preliminary objections having been overruled, they filed answers to the complaint on November 1st and November 7, 1951.
Although the cause could have then proceeded to hearing at the instance of the remaining parties plaintiff, namely, the district attorneys of the two counties, nothing occurred in the matter until July 16, 1952 when Harry Alan Sherman, Esquire, one of the three attorneys of record for the Sportsmen's League, wrote to Judge NEELY of the Dauphin County Court asking that the case be set down for hearing. On July 23, 1952 the defendants filed a petition for a rule to show cause why Mr. Sherman and his two associates, William D. Henning, Esquire and Francis X. McCulloch, Esquire, should not file a warrant of attorney and establish their legal authority to represent the District Attorneys of Clarion and Butler Counties, the only two parties plaintiff remaining in the case. An answer was filed by Messrs. Sherman, Henning and McCulloch with new matter to which defendants filed a reply.
Defendants' petition, after setting forth the ruling dismissing the Sportsmen's League as a party plaintiff and reciting the action of Mr. Sherman in asking that the case be ordered on for trial, alleged that the respondents were attorneys of record for and represented only the Sportsmen's League; that they were not empowered to represent the District Attorneys of Butler or Clarion Counties; that the said District Attorneys had not withdrawn their appearance as attorneys of record for their respective counties; and that no warrant of attorney to represent either of the two existing plaintiffs had been filed by the respondents. *363 Additional allegations in the petition were to the effect that neither of the two District Attorneys was authorized by law to appoint a private attorney to represent him in litigation on behalf of his respective county; that the applicable statutes of the Commonwealth relating to the appointment of assistant district attorneys had not been complied with in the case of either county; that neither Mr. Sherman nor any of his associates had been, nor could they be, appointed as assistants to the District Attorney of either county and that none of the respondents were attorneys of record authorized to practice law in either Butler or Clarion County.
The answer of Messrs. Sherman, Henning and McCulloch had attached thereto copies of certain papers which purported to be warrants of attorney from the persons who were District Attorneys of Clarion and Butler Counties as of the date of the commencement of the action and also from their successors presently in office. The warrant of attorney given by Clyde S. Shumaker, District Attorney of Butler County, is as follows: "I, Clyde S. Shumaker, duly elected District Attorney of Butler County, Pennsylvania, do hereby constitute and appoint Harry Alan Sherman, William D. Henning and Francis X. McCulloch, attorneys of the City of Pittsburgh, Allegheny County, Pennsylvania, to represent me in the above capacity as attorneys in the above entitled case; the said Francis X. McCulloch, William D. Henning and Harry Alan Sherman shall have and are hereby given complete power to prosecute, negotiate, settle and superintend the above entitled action for me and in my name, place and stead and to represent me in the Court of Common Pleas of Dauphin County or in the appellate courts of this Commonwealth in the said action. It is understood and agreed that all costs or other claims arising from *364 the said action will be paid by the Allegheny County Sportsmen's League, Inc., and its officers and not by me or the County of which I am District Attorney. Witness my hand and seal this day of, 19. (s) Clyde S. Shumaker [Seal]". (Emphasis supplied). The warrant given by W.P. Geary, District Attorney of Clarion County, was identical but bore the date October 5, 1949. The warrants given by Clark H. Painter and Merle E. Wiser who succeeded Messrs. Shumaker and Geary as District Attorneys of Butler and Clarion Counties respectively, were undated, identical and purported to authorize Messrs. Sherman, Henning and McCulloch to continue to perform such duties in the equity proceeding as had been performed in the past for his predecessor ". . . in like manner, and under the same arrangements.", and granted all powers necessary ". . . to prosecute, settle and discontinue, compromise and to do any and all things that I am empowered to do by reason of my office as District Attorney. . .". (Emphasis supplied). The answer of the three attorneys stated that by reason of these warrants they were counsel for the District Attorneys and alleged that the petitioner had been apprised at the argument on the preliminary objections that respondents were authorized to act for the two District Attorneys. The petitioners' allegation that neither of the District Attorneys was authorized to appoint a private attorney to represent him in litigation in which he was acting in an official capacity was denied. All of the other allegations of the petition, including particularly those stating that the respondents had not been and could not be appointed assistants to the District Attorney of Clarion County or Butler County under the applicable laws of this Commonwealth, and that they were not authorized to practice in either county, were admitted.
*365 Under New Matter it was alleged that the defendants' petition had been filed after unreasonable delay and not in good faith. Defendants filed a reply to this New Matter, averring that the petition was filed in the week immediately following the first action taken by Messrs. Sherman, McCulloch and Henning after the Allegheny County Sportsmen's League had been dismissed as a party plaintiff, i.e., the letter to Judge NEELY under date of July 16, 1952 asking that the case be set down for hearing. In this respect the reply admitted that at all times since the filing of the bill, all steps in the prosecution of the case had been taken by and on the initiative of the respondent attorneys, but pointed out that because of the fact that these persons did represent the Allegheny County Sportsmen's League, which at such times was still a party plaintiff in this proceeding, no objection could have been raised by the defendants to this procedure. The defendants' reply also averred that it was not until after July 16, 1952, the date of the first affirmative step in the prosecution of this case after the District Attorneys of Clarion and Butler Counties had become the only parties plaintiff, that the question of representation by the attorneys for the Sportsmen's League of these public officials could have been properly raised.
The defendants also filed exceptions to and a motion to strike off the warrants of attorney. The court sustained the exceptions, granted the motion to strike off and ordered and directed ". . . that the instant action shall not be further prosecuted by the remaining plaintiffs unless it is actively and personally directed and conducted by the present district attorneys of Butler and Clarion counties or their successors in office.". The present appeal is from this order.
In its comprehensive opinion the court below in part said: "This language [referring to the agreement *366 in the warrants that all costs in the action would be paid by the Sportsmen's League and its officers and not by the counties or the district attorneys] seems to make it clear that the respondents are even now, after their original client, the Allegheny County Sportsmen's League, Inc., was eliminated as a party plaintiff, attempting to continue the fight by the fiction that they are representing the District Attorneys and the Commonwealth of Pennsylvania. An examination of the record and the various papers filed seems to clearly disclose that all aggressive action taken to date in and out of court other than the execution and filing of the complaint has been taken by and on behalf of the Sportsmen's League and not by or on behalf of the District Attorneys. Such examination will likewise show that the Sportsmen's League exhausted every means possible to remain a party plaintiff, even to an appeal to the Supreme Court. Had the District Attorneys shown any real interest in the case such efforts would have been unnecessary. In addition, the papers executed by the present District Attorneys are undated and it is not unreasonable to conclude that they were signed solely as a result of the rule to show cause. It must necessarily follow that the respondents had no so-called warrants of attorney between the date of the bringing of the action and the time of the filing of the petition for the rule. The former District Attorneys had ceased to hold office at the time the rule was granted. The original papers gave the respondents `complete power to prosecute, negotiate, settle and superintend' the action, while the second set of papers given by the District Attorneys who succeeded the original two District Attorneys provided that they should `continue to perform such duties in the above-entitled matter as in the past they have performed' for the former District Attorneys `in like manner, and *367 under the same arrangements', and they were given power to `prosecute, settle and discontinue, compromise, and to do any and all things that I am empowered to do by reason of my office as District Attorney' in this case. This is a strange and unusual delegation of power by elected officials and we find indicates a complete surrender or abdication of power on the part of these public officials so far as this particular case is concerned. Our conclusion is that it indicates an intention to turn over the name of District Attorney to the private attorneys, the respondents, for use of the Sportsmen's League, which is no longer a party in the case. This cannot be done.".
To meet the charge that their attempted continuation in the case is in circumvention and evasion of the ruling of the court that their clients, the Sportsmen's League and its officers, are not proper party plaintiffs, Messrs. Sherman, Henning and McCulloch assert that they are also attorneys for the district attorneys. They admit that they were at no time appointed assistant district attorneys and that they could not have been so appointed under any authorizing statute. They rely solely upon the warrants of attorney ill-advisedly and improperly executed by the district attorneys. These warrants constitute a complete abdication of the duties, powers and responsibilities attached to the latters' offices, a total abandonment and surrender to private counsel of the discretion and judgment vested in them as public officials in a matter affecting the general public. In this case the interest of the Commonwealth as a whole as well as the interest of the residents of Clarion and Butler Counties is involved. There could be no guarantee that private counsel would so conduct the litigation as to protect those interests.[1] The only *368 persons obliged and empowered so to do were and are the sworn public officials to whom the right to sue in the name of the Commonwealth is entrusted by the statute under which the proceeding was authorized and instituted.[2]
There is no analogy, as suggested, in the office of Attorney General. Aside from the common law powers of the latter (See Commonwealth ex rel. Minerd et al. v. Margiotti, 325 Pa. 17, 188 A. 524) not possessed by a district attorney who is solely the creature of statute, the Attorney General is specifically given the power to appoint deputy attorneys general and special counsel to represent the Commonwealth or any department, board or commission thereof: Act of April 9, *369 1929, P.L. 177, § 906, 71 PS § 296. In contrast, the precise conditions in which assistant district attorneys and special assistants to the district attorney may be appointed is carefully spelled out by the statutes pertaining to his office, and, as admitted by appellants, nothing is contained therein that would authorize their appointment by the district attorneys in the instant case as assistants.
We do not hold that because of the statutory coverage of such appointments a court is confined thereto and wholly without power to appoint an attorney to act as an assistant to the district attorney. Such inherent power has been recognized (see Commonwealth v. Brownmiller, 141 Pa. Superior Ct. 107, 14 A. 2d 907). Nor do we hold that a district attorney in a prosecution or proceeding brought in the interest of all members of the public alike may not obtain the advice and assistance of private counsel under exceptional conditions requiring additional professional skill and knowledge, if the latter's compensation is provided for and his participation is in subservience to the district attorney's discretion, judgment and control of the litigation. We do hold that in such a public prosecution or proceeding there is no statutory or common law authority permitting a district attorney to completely delegate all of his official powers and duties to private counsel on the naked authority of the district attorney himself.
It is contended that the defendant corporation is estopped from challenging the right of Messrs. Sherman, Henning and McCulloch to continue in the prosecution of the case. This contention is based on consent or waiver. It is argued that no objection was made to the appearance of these gentlemen in the earlier stages of the proceeding. It should be observed that after their clients, the Sportsmen's League and its officers, *370 were dismissed as parties plaintiff, the defendant took prompt action to question their status as soon as it learned, by reason of the request made by Mr. Sherman to the court that the case be listed for trial, that he and his associates proposed to continue in the prosecution of the case. However, conclusive against the contention is that neither consent nor acquiescence could breathe life into an act by the public officials here involved which was entirely devoid of legal sanction. There was no authority in the district attorneys to delegate all of their powers, duties and responsibilities to private counsel whether such delegation was informally or formally accomplished. In this latter regard the warrants of attorney were merely evidential of such unlawful delegation, so that whether such warrants were timely demanded under the Act of April 14, 1834, P.L. 333, is beside the point.
The order of the court below is affirmed at appellants' costs.
DISSENTING OPINION BY MR. JUSTICE MUSMANNO:
On December 19, 1949, the Commonwealth, on relation of the District Attorneys of Butler and Clarion Counties, the Sportsmen's League and certain citizens, firms and corporations "similarly affected" brought an action in equity against the New York and Pennsylvania Company, a New York Corporation, to restrain a public nuisance. The bill averred that the corporate defendant operates a pulp and paper mill at Johnsburg, Elk County, which mill discharged and continues to discharge into the Clarion River and its tributaries, industrial waste composed of putrescible organic matter, noxious harmful materials and acids, in such quantity and intensity, as to pollute the waters of the Clarion River to the damage and injury of the public health, *371 to animal and acquatic life, and to the uses of the river for domestic and industrial consumption and recreation. It averred that the action of the defendant corporation constitutes a public nuisance and that its ill effects are destroying the public waters and tributary lands and have contaminated the air to the detriment and peril of the health of the residents of the riparian lands in the Clarion River Basin and extending into the Allegheny River south into the City of Pittsburgh. The bill averred that the defendant company is allowing the discharge in excess of 20 millions of gallons of polluted water daily into the waters of this Commonwealth.
The history of what followed the filing of the Complaint has been related somewhat in detail in the Majority Opinion and therefore need not be repeated here. It is enough to say that four and one-half years have passed since the filing of a Complaint aimed at preventing the contamination, pollution and poisoning of the waters of a river of this Commonwealth and the litigation is yet at a standstill while the contaminating, polluting and poisoning continue to run their obnoxious, deleterious and destructive course.
The law's delays which provoked Hamlet into contemplating even the lethal use of a "bare bodkin" was never more apparent than in this litigation which, following almost five years of pleadings, arguments, appeals and re-appeals, is no closer to adjudication than it was in December, 1949, although in the meantime 300 billions of gallons of polluted water, according to the Complaint, have entered the Clarion River and, through its confluence with other streams, have had their deleterious effect on the entire geographical area watered by those streams.
The bill charges the commission of a public nuisance and there can be no question that an Equity court has jurisdiction to consider and inquire into such a *372 cause of action. The bill is particularly brought under the provisions of the Pure Streams Act of June 22, 1937, P.L. 1987, Art. I, par. 3, but this part of the Act is only declaratory of the common law relating to nuisances, since corruption of waterways has long been recognized as both a public and private nuisance. As early as 1832, this Court said in the case of Howell v. McCoy, 3 Rawle 256, 268: "It is a principle of the common law, that the erection of any thing in the upper part of a stream of water, which poisons, corrupts, or renders it offensive and unwholesome, is actionable. And this principle not only stands with reason, but it is supported by unquestionable authority ancient and modern."
Thus, there can be no question that the action was well brought under common law and statutory authority. The question has been raised, however, as to whether Attorneys Harry Alan Sherman, William D. Henning and Francis X. McCulloch may act on behalf of the district attorneys of Butler and Clarion Counties. The lower court ruled that these three attorneys do not have such authority and the Majority of this Court has affirmed that action.
In its entire opinion the majority has cited three cases: Comm. of Pennsylvania ex rel. Shumaker v. N.Y. & P. Co., 367 Pa. 40; Comm. ex rel. Minerd et al. v. Margiotti, 325 Pa. 17; and Comm. v. Brownmiller, 141 Pa. Superior Ct. 107. None of these cases is authoritative of its decision, and, in fact, one of them, Comm. ex rel. Minerd, can, by broad comparison, support the position of the appellants. The district attorneys of the various counties of Pennsylvania at one time were all deputies attorney general. In Com. v Lehman, 309 Pa. 486, this Court, speaking through Mr Justice LINN, said: "Prior to the Act of May 3, 1850 P.L. 654, 16 PS, section 1691, the attorney general was *373 represented in each county by his deputy who conducted criminal prosecutions; by that statute the office of district attorney was created and that officer was charged with the performance of the duties theretofore performed by the deputy attorney general."[*]
It has been argued in this case that because of their participation in the proceedings the three attorneys are in effect holding public office and this they may not do. The same argument was unsuccessfully made in the Minerd case: "It is argued that the special attorney thus appointed holds an office. We think this by no means follows. He is just what the act says he is, a special attorney `retained and employed' by the Attorney General to represent the Commonwealth in the particular matter or matters just as the Attorney General may retain and employ special attorneys to represent the Commonwealth in other special situations when in his judgment it is proper to do so. The person so retained and employed is the representative of the Attorney General for the time being and in the business confided to his care." (P. 31)
What the Attorney General may do on a state-wide scale, the District Attorney may do on a county-wide scale, since the district attorney is in effect the attorney general of a county and possesses the same powers which the attorney general had in each county prior to 1850. In Com. v. Brownmiller, 141 Pa. Superior Ct. 107, the District Attorney of Dauphin County petitioned the Court of Quarter Sessions for the appointment of additional district attorneys to assist him in the investigation and trials of certain cases. The assistants were appointed and their appointments challenged. The Superior Court held: "Assuming these assistants to the district attorney were but officers de *374 facto and not de jure, they were discharging their duties on behalf of the public under an appointment, which, if irregular, gave them color of title and therefore they were not mere volunteers. Their authority to act cannot be successfully attacked here."
Applying the same reasoning to the case at bar we have the situation of three attorneys being appointed by two District Attorneys. They are, therefore, not "mere volunteers", and, under the Brownmiller case, the defendant, being a private corporation, had no authority to attack the appointment. Furthermore, the three attorneys here have not actually been made assistant district attorneys. They are only special counsel for the two district attorneys in one special case.
The appellees in their brief refer to various statutes collected in the General County Law of May 2, 1929, P.L. 1278, 16 P.S. § 1 et seq., for the purpose of showing that Messrs. Sherman, Henning and McCulloch cannot qualify as assistant district attorneys because they are not residents of either Butler or Clarion Counties; further, that there is no provision made for compensation to such additional District Attorney assistants. But, as I have already stated, these three lawyers are not assistant district attorneys in the technical sense of men appointed by the District Attorney to assist him in all his functions as a district attorney. Secondly, these three lawyers have not asked for, nor are they to receive any compensation for the services they will voluntarily offer to the two counties. It is not an anomaly (and certainly it is most gratifying) that there are people who are willing to offer their services to the government content only with the compensation of having done a patriotic duty. During our national emergencies many business men volunteered to work for the token pay of a dollar a year so that *375 they might assist in the fields in which they were best qualified in the defense of our endangered nation.
It may be that the warrants of attorney signed by the District Attorneys of Butler and Clarion County are too broad in their authorization, but this is a matter that can easily be attended to at the proper time and place. The District Attorneys may modify those warrants of attorney to coincide with the actual services to be rendered by the three lawyers, but there is no statutory prohibition against their availing themselves of the assistance of any qualified person to confront any emergency which arises during their respective incumbencies.
In Commonwealth v. Jones, 275 Pa. 298, the appointment of special counsel for the County Commissioners of Cambria County was attacked on the ground that the County had its regular county solicitor who could do the work entrusted to special counsel. This Court held that the appointment was legal and proper: "The services to be rendered were not general in relief of the county solicitor, but special in connection with specific projects, these being, all matters connected with proposed alterations and additions to the courthouse, the bonding of the county to provide the funds necessary to make them, and in all the legal incidents thereof, also as special associate counsel in connection with a proposed bond issue of the county, which the record shows was in excess of $4,000,000, for the purpose of providing improved highways within the county, part of which it was necessary to authorize by popular vote, and in all matters of a legal nature incident to or arising out of the creation of this indebtedness and the purposes thereof."
The services rendered and to be rendered by the three attorneys in this case are "special in connection with specific projects." It was brought out at the oral *376 arguments that because of special study, training and experience, Attorneys Sherman, Henning and McCulloch are peculiarly qualified to prepare and try cases involving the Pure Streams Act. The subject is unquestionably a vast one, involving not only maintenance of our watercourses in a clean and salubrious state, but also the proper protection of industries for the prosperity and economic health of the Commonwealth.
Can it possibly harm anyone legally to have three experts prepare and try this case for the Commonwealth? The Attorney General's office over many years has employed special counsel who are not deputies attorney general but who enter into negotiations for the State and try causes for the Commonwealth involving countless millions of dollars. The results attained by these special counsel for the Attorney General have never been questioned, their authority has never been challenged. Considerable confusion and harm would result if, because of the decision of the Majority today, the legality of the actions of special counsel for the Attorney General should be thrown into the twilight of doubt.
In the criminal courts of Allegheny County and Philadelphia County, and, I presume, in other counties of the State as well, private counsel nearly always represent the District Attorney's Office where cross-suits are involved. In those cases the District Attorney takes no part in the trial. The private counsel examine and cross-examine witnesses, sum up to the jury and make representations to the Court. Does the decision today of the Majority of this Court cast a mist of inconclusiveness over all jury verdicts, all jail sentences imposed and fines collected under the cross-suit system? In none of these cases is private counsel appointed by the Court.
*377 Now that the Majority has affirmed the decision of the lower court what is to happen? The lower court declared that: "The instant action shall not be further prosecuted by the remaining plaintiffs unless it is actively and personally directed and conducted by the present district attorneys of Butler and Clarion counties or their successors in office." It may be that the District Attorneys of Butler and Clarion Counties are too busy with the normal functions of their offices in the detection and prosecution of crime to take up this additional burden of a civil case which requires the amassing of data, the gathering of evidence not from one county but many counties, the summoning of witnesses, many days of court trial in a county not that of the involved district attorney. It may be that the district attorneys believe themselves lacking in the technical knowledge and training necessary adequately to prepare and try the issues raised by the pleadings. It may be that since more than their respective counties are involved, the district attorneys may have difficulty in correlating their respective official participation and that therefore the services of attorneys not bound to geographical limits of either county are imperative.
What is to happen? The law is a sphinx and in the meanwhile 20 millions of polluted water daily are pouring into the arteries of the Commonwealth.
Mr. Justice BELL joins in this dissent.
NOTES
[1] It is manifest that in a proceeding to abate a public nuisance of the character here alleged to exist not only does a conflict arise between private and public interests but a conflict in the public interest itself, namely, the desirability of cleaning up the streams of the Commonwealth on the one hand and the social and economic necessity of protecting industrial development on the other. The weighing of such considerations is properly for public officials as representatives of all the people.
[2] Section 601 of the Act of June 22, 1937, supra, under which the present action was instituted provides: "All pollutions hereinbefore declared to be nuisances or maintained contrary to the provisions of this act, shall be abatable in the manner now provided by law or equity for the abatement of public nuisances. In addition, suits to abate pollution of any of the waters of the Commonwealth may be instituted in equity or at law in the name of the Commonwealth upon relation of the Attorney General, or upon relation of any district attorney of any county, or upon relation of the solicitor of any municipality affected, after notice has first been served upon the Attorney General of the intention of the district attorney or solicitor to so proceed. Such proceedings may be prosecuted in the court of common pleas of Dauphin County, or in the court of common pleas of the county where the nuisance has been or is being committed, or of any county through which or along the borders of which flows the water into which such pollution has been discharged at any point above, and to that end jurisdiction is hereby conferred in law and equity upon such courts: . . ." (Emphasis supplied).
[*] Emphasis throughout, mine.