621 A.2d 606

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**George STIPETICH.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Heidi STIPETICH.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1992.

Filed Feb. 9, 1993.

428

Edward M. Clark, Asst. Dist. Atty., Pittsburgh, for Com., appellant.

William F. Manifesto, Pittsburgh, for appellee (at 1773 and 1801).

Before ROWLEY, President Judge, and CAVANAUGH, CIRILLO, OLSZEWSKI, DEL SOLE, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

JOHNSON, Judge.

In these cases, we are asked to determine whether the trial court abused its discretion in dismissing the criminal complaints brought against George and Heidi Stipetich by the Allegheny County Police Department, where a non-prosecution agreement had been entered between the Stipetiches and the City of Pittsburgh Police Department and full performance had been rendered by the Stipetiches. As we conclude that the trial court did not abuse its discretion, we affirm.

On November 13, 1990, officers of the City of Pittsburgh Police Department obtained a search warrant for the Stipetich home. Accompanied by officers from the Upper Saint Clair Police Department, they searched the Stipetich home pursuant to that warrant. In that search, the Pittsburgh Police, under the supervision of Sergeant Thomas, recovered: various items of drug paraphernalia containing cocaine residue; several bottles of prescription analgesics; a small amount of marijuana; and one dexedrine tablet. These items were retained and analyzed by the Pittsburgh Police, who were in sole control of the investigation.

The Stipetiches, at that time, were represented by Attorney Charles Scarlata. Attorney Scarlata contacted Sergeant Thomas "to ascertain exactly what they [Pittsburgh Police] thought was going on and what [he] might prepare for as a lawyer trying to represent clients." N.T., October 8, 1991, at 43. After several discussions, on April 13, 1991, Attorney Scarlata and Sergeant Thomas reached an agreement about the disposition of the Stipetiches' case. The agreement was that if George Stipetich would answer all questions concerning the source of the controlled substances and paraphernalia seized at his residence, no charges would be filed. N.T.,

October 8, 1991, at 44. George Stipetich immediately fulfilled his part of the agreement by answering all questions asked of him by the Pittsburgh Police Officers.

On September 9, 1991, Allegheny County Police filed criminal complaints against the Stipetiches, which charged possession of cocaine residue and pharmaceuticals based on the items seized during the search of the Stipetiches home by the Pittsburgh Police some ten months earlier. Successor defense counsel filed a motion to dismiss the charges against the Stipetiches based on the April 13, 1991, agreement between the Stipetiches and Sergeant Thomas, upon which full performance was rendered by the Stipetiches prior to any charges being filed. Following a hearing on the Motion to Dismiss, at which Attorney Scarlata was the sole witness on that issue, the trial court, the Honorable Robert E. Dauer, granted the motion and dismissed the charges against the Stipetiches. It is from this order that the Commonwealth appeals.

In our review of a dismissal of an indictment by the trial court, we are limited to upholding the trial court's conclusions absent an abuse of discretion. *Commonwealth v. Gemelli,* 326 Pa.Super. 388, 474 A.2d 294 (1984). We, as an appellate court, are bound by the trial court's findings of fact, if supported by the record. *Commonwealth v. Iannaccio,* 505 Pa. 414, 480 A.2d 966 (1984), *cert. denied,* 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985).

The sole issue presented for our review is whether the trial court abused its discretion in binding the Commonwealth to the non-prosecution agreement entered by the Stipetiches and the City of Pittsburgh Police Department, the enforcement of which, after full performance by the Stipetiches, resulted in the dismissal of all charges against the Stipetiches. Despite the arguments of the Commonwealth to the contrary, we deem unnecessary, to the disposition of this case, the exploration of whether "the police", as an entity, have authority to enter into non-prosecution agreements. We conclude that the record supports the trial court's finding that a binding agreement had been entered by the Stipetiches and the Pitts-

burgh Police, and therefore, the trial court did not abuse its discretion in enforcing it.

This court has discussed the effect of non-prosecution agreements between a potential defendant and a prosecuting attorney. *Commonwealth v. Ginn,* 402 Pa.Super. 405, 587 A.2d 314 (1991). There, we held that a non-prosecution agreement was analogous to a plea bargain agreement, and must be strictly enforced. *Id.* In that case, we implicitly applied contract law standards to analyze the mutual conditional promises made by both the potential defendants and the prosecutor and held that the integrity of the judicial system demanded that the Commonwealth live up to its obligations under the agreement. *Id.* at 410, 587 A.2d at 316.

While this case is not factually identical to *Ginn,* the same principles apply. Here, a formal agreement not to prosecute was entered, by the police officer in charge of the case and the attorney representing the Stipetiches. The Stipetiches, in reliance on this agreement, divulged all information that the police requested, and during this process gave up the valued constitutional guarantee against self-incrimination. While the police, rather than the prosecutor, entered into this agreement with the Stipetiches, both the Stipetiches and their attorney were induced to believe that Sergeant Thomas had full negotiating authority over the case and they detrimentally relied on that belief and the bargain that had been struck.

The United States Supreme Court discussed the constitutional implications of plea-bargain agreements in a seminal case that has been widely cited as authority for upholding non-prosecution agreements as well. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In that case, the defendant, charged with two felony offenses, agreed to plead guilty to a lessor included offense in exchange for the prosecutor's promise not to make a sentencing recommendation. At the time of sentencing, a different prosecutor was assigned to the case and recommended the maximum sentence. The defendant, thereafter, unsuccessfully attempted to withdraw his guilty plea. On appeal to the United States Supreme Court, the conviction was vacated and remanded,

due to the breach of the plea agreement. The Court stated, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433. The Court, however, left the determination of the proper remedy to impose for breach of the plea agreement within the discretion of the trial court. *Id.*

Relying on *Santobello,* and other federal circuit court cases regarding the obligations of the government under plea bargain agreements, the Ninth Circuit discussed non-prosecution agreements in *United States v. Carrillo,* 709 F.2d 35 (1983). In that case, Carrillo was arrested for the possession of heroin. Following his arrest, agents of the Drug Enforcement Administration (DEA) offered not to prosecute Carrillo if he cooperated in the government's investigation of drug traffickers. Carrillo agreed to cooperate in the investigation but refused to testify due to fears for the safety of himself and his family. Carrillo fully cooperated in the drug investigation but when called to testify, he refused. Notwithstanding the non-prosecution agreement, Carrillo was thereafter indicted, allegedly based on his breach of that agreement. The district court dismissed the indictment, after analyzing the agreement between the DEA agents and Carrillo and determining that a promise to testify was not part of the bargain. The Ninth Circuit affirmed the dismissal of the indictment, stating that non-prosecution agreements must be analyzed in terms of contract law standards. *Id.* at 36. The court, after determining that full performance had occurred on the part of Carrillo, then held that "under settled notions of fundamental fairness the government [through the actions of the DEA agents] was bound to uphold its end of the bargain." *Id.* at 37.

In an earlier case, the First Circuit addressed a similar non-prosecution agreement. *United States v. Rodman,* 519 F.2d 1058 (1975). In that case, an agent of the Securities and Exchange Commission (SEC) had obtained substantial self-incriminating statements from Rodman on the basis that the SEC would strongly recommend to the United States Attor-

ney that Rodman not be prosecuted. Thereafter, Rodman was indicted and sought to have the indictment dismissed based on his non-prosecution agreement with the SEC agent. The district court found that a non-prosecution agreement existed between Rodman and the SEC and that despite full performance by Rodman, the SEC had failed to uphold its part of the bargain. The First Circuit, in affirming the dismissal of the indictment, held that Rodman had been induced to make statements based on his reliance on the non-prosecution agreement, and that in light of the clear breach of the agreement by the SEC, dismissal of the indictment was not an abuse of discretion by the district court. *Id.* at 1059–1060.

We find the reasoning in the above cases to be persuasive. There, the courts did not explore the authority of the agent of the Government making the non-prosecution agreement with the potential defendant but ostensibly accepted the apparent authority of law enforcement agents to bind those involved in a subsequent prosecution. *See* Restatement (Second) of Agency § 8. In *Santobello, Carrillo* and *Rodman*, under principles of equity and fundamental fairness, these courts held that once the existence of an agreement is established, the remedy for the breach of a non-prosecution agreement rests within the sound discretion of the trial court.

Turning to decisions by state courts, in two cases, the Supreme Court of Colorado, sitting *en banc*, also enforced agreements between police officers and potential defendants, where the defendants detrimentally relied on the agreements to divulge potentially incriminating information in exchange for promises by police that the information would not be used in subsequent prosecutions. While in these cases, the police did not enter into non-prosecution agreements with the defendants, we find the reasoning of the Colorado Supreme Court to be useful in our determination of the issue before us.

In *People v. Fisher*, 657 P.2d 922 (Colo.1983), Fisher was arrested for and confessed to committing several residential burglaries. The detective in charge of the case asked Fisher if he would consent to a videotape interview about his burglary

techniques, to be used for educating future law enforcement agents. Fisher consented to the videotaping on the condition that it could not be used against him in a subsequent prosecution. After the disposition of the charges pending against him by a plea-bargain which resulted in his serving no time in prison, Fisher was subsequently arrested on charges of residential burglary. After pleading not guilty to the charges and upon discovering that the prosecution intended to introduce the videotaped interview at trial, Fisher moved to suppress the videotape. The trial court granted the motion to suppress, stating, "we undermine the whole principles of [the] integrity of our society if we think that the state is not bound by its agreements." *Id.* at 925. The Supreme Court of Colorado upheld the trial court's suppression order, relying on *Santobello* and subsequent federal cases. The Colorado court required specific performance on Fisher's agreement with the police, "because the officer's promise implicated other constitutional rights of the defendant, because the defendant took detrimental action in reasonable reliance upon the promises, and because no other remedy short of enforcement of the promise would secure fundamental fairness to the defendant...." *Id.* at 925.

We find the reasoning in *Fisher* as well as in a subsequent decision by the same court, *People v. Manning*, 672 P.2d 499 (Colo.1983), to be persuasive. In *Manning*, prosecutors appealed a suppression order by the trial court, which was based on an agreement between Manning and a police officer that certain statements would not be used against her. The Supreme Court of Colorado upheld the order to suppress, despite the arguments of the prosecutor that the police officer was not authorized to make the agreement not to use Manning's statements against her. The court, there, held that the police officer, under a theory of apparent authority, was no less an agent of the government than the prosecuting attorney. *Id.* at 505–506. The court went on to conclude that the only viable area of inquiry was whether an agreement actually existed, the terms of the agreement, and, whether there was detrimental reliance by Manning. There the court determined

that there was indeed an agreement between the police officer and Manning, upon which Manning detrimentally relied, and that the intended scope of the agreement was that the information which Manning revealed could not be used against her in a subsequent prosecution.

In the present case, the trial court, using a rationale similar to that employed by the Colorado Supreme Court, determined that a negotiated agreement existed, "based on the good faith efforts of both the defendants and the Pittsburgh Police." Based on this conclusion, and the fact that the Stipetiches had fully performed their obligations under the agreement prior to the filing of any charges against them, the trial court enforced the agreement.

The Commonwealth, however, directs us to another state court decision, *People v. Gallego*, 430 Mich. 443, 424 N.W.2d 470 (1988), as the case which should guide us in the non-enforcement of the agreement between the parties in the instant case. In that case, the defendant, in an agreement with a DEA agent, returned money offered for the purchase of cocaine to the Michigan State Police in exchange for a promise of non-prosecution. Thereafter, a state prosecution was initiated. Gallego asserted the he was entitled to specific performance of the non-prosecution agreement. The Michigan Supreme Court, looked to *Santobello* for guidance in this area, and determined that under its holding specific performance was not required. The Michigan court then held that specific performance of the agreement was not required for the "misconduct" on the part of the police in entering into the agreement, but rather, suppression of the buy money and the written agreement would serve to cure the constitutional violations suffered by Gallego due to his detrimental reliance upon his written agreement with the police. *Id.* at 456–457, 424 N.W.2d at 475.

The *Gallego* court correctly determined that *Santobello* did not require specific performance of the plea agreement but the court failed to recognize that the United States Supreme Court did hold that the remedy for the breach of that agreement was best left within the discretion of the trial court. In

*Gallego,* the Michigan Supreme Court usurped the power of the trial court to impose a remedy for the breach of the non-prosecution agreement, and substituted its judgment for that of the trial court by imposing its own remedy. We decline to follow this example.

We find the reasoning presented in Justice Cavanaugh's *dissent* in *Gallego* to be more persuasive. The Justice stated, in part:

> In the present case, the police may not have had the authority to propose the agreement in question ... What is important is not whether the police had the authority to make the promise, but whether the promise was in fact made. Here, the written, signed agreement proposed by the police is evidence of this promise. In reliance on this promise and the advice of counsel, defendant performed his part of the agreement.

> The precept that people should keep their promises should apply to the state no less than to individuals. When a promise is made by the state to an individual involved in the criminal justice system, the standards of substantive due process hold the state to a high duty of care in keeping its promise. Although the constitution may not specifically require specific performance in this case, the principle of fundamental fairness does. It is fundamentally unfair for the state to create and then destroy a defendant's expectations while reaping the benefit of its bargain.

*Gallego* at 461–462, 424 N.W.2d at 477–478 (Cavanaugh, J., dissenting) (citations omitted).

█ It is after full consideration of the reasoning presented in all of the above cited cases, that we approach this issue based on the facts before us. The crucial question for our inquiry is whether the trial court's finding that a binding agreement was reached between the City of Pittsburgh Police and the Stipetiches is supported by the record. If the trial court's determination that an agreement existed is supported by the record, the remedy for the breach of that agreement remains solely within its discretion. *Santobello* at 263, 92 S.Ct. at 499, 30 L.Ed.2d at 433.

 The record reveals that Attorney Scarlata was the sole witness on the issue of whether a non-prosecution agreement existed. We conclude that the undisputed testimony offered before the trial court supports the trial court's finding that an agreement existed between the Stipetiches and the Pittsburgh Police and that the Stipetiches reasonably relied upon that agreement in answering all police questions, foregoing the Constitutional guarantees against self-incrimination.

Attorney Scarlata, upon cross-examination by the district attorney, testified:

Q: As part of your representation of George Stipetich, did you go to other agencies that could have possible jurisdiction to file in order to negotiate with them?

A: There was no need to do that. I was talking to the people who had control of the physical evidence and from my view control of the case.

\* \* \* \* \* \*

Q: Was it not your understanding of the general case law in this area that in order to provide an agreement, it must be entered into with the prosecutor, such as the U.S. Attorney or the district attorney?

A: No, that's not my understanding. My understanding is, and it is something that enables the system to function, is that if a policeman makes a representation to me, I can rely upon that representation.

N.T., October 8, 1991, at 52.

The trial court concluded that, as full performance had been rendered by the Stipetiches prior to the filing of any charges against them, the Commonwealth must be held to the bargain made in good faith between the Stipetiches and the City of Pittsburgh Police. As the only unfulfilled promise in the agreement remained the promise not to prosecute, under accepted notions of equity and fundamental fairness, enforcement of that agreement necessarily entailed granting the Stipetiches' Motion to Dismiss the indictment.

We conclude that based on the specific facts of this case, the trial court did not abuse its discretion in enforcing the non-

prosecution agreement between the Stipetiches and the City of Pittsburgh Police.

Order of October 8, 1991, Dismissing the Criminal Complaints is Affirmed.

DEL SOLE, J., joins and files a concurring statement.

FORD ELLIOTT, J., concurs in the result and files a concurring statement.

HUDOCK, J., concurs in the result.

OLSZEWSKI, J., files a dissenting opinion in which ROWLEY, President Judge, joins.

POPOVICH, J., files a dissenting opinion in which ROWLEY, President Judge, and CAVANAUGH, J., join.

DEL SOLE, Judge, concurring.

I join Judge Johnson's Opinion. I believe the concerns expressed by the dissents are best dealt with between district attorneys and law enforcement agencies.

We have no way of knowing how many times a day, throughout the Commonwealth, that police officers agree with a criminal suspect to reduce or to not file charges in exchange for investigative cooperation. It has been represented that this is a constantly used tool in law enforcement. If a local district attorney wishes to avoid being bound by such agreements, the remedy is to notify all police departments within the county and to seek administrative discipline against any officer who may violate the rule.

I would place this burden on the Commonwealth and its agencies, not the public.

FORD ELLIOTT, Judge, concurring.

I concur in the result reached by the majority but cannot join in its rationale. Rather, I rely on my concurring statement in the companion case of *Commonwealth v. Scuilli*, 423 Pa.Super. 453, 621 A.2d 620, and decide that before relief may be granted based on a nonprosecution agreement, there must

be some showing of detrimental reliance rising to the level of prejudice or manifest injustice to the party seeking enforcement. Based on the record before this court, I can find that such prejudice was suffered by the Stipetiches in their foregoing Constitutional guarantees against self-incrimination. Therefore, I cannot reverse the trial court's decision to dismiss the charges. However, in all candor, from my reading of the trial court's opinion, I would not characterize this choice of remedy as an exercise of the trial court's discretion. Judge Dauer specifically found that the police officer in question had the authority to negotiate the nonprosecution agreement and that this *mandated* the dismissal of charges.

OLSZEWSKI, Judge, dissenting.

I must respectfully dissent from the majority's conclusion in this case. Although I agree with a great part of the Honorable Judge Popovich's dissent, I am writing separately. I do so because I feel that the majority's opinion, while embedded in the best intentions, will have a deleterious effect on the efficient administration of criminal justice in this Commonwealth. My view of the correct disposition of this case, however, varies slightly from that which learned Judge Popovich opines.

Police employed by both the City of Pittsburgh and Allegheny County searched defendants' residence pursuant to a valid search warrant. The search was fruitful, producing what the officers believed to be illegal narcotics and drug paraphernalia. The city police, as the affiants on the warrant, maintained custody of the contraband. In an effort to zealously represent his potential criminal defendants, the Stipetichs' private counsel initiated negotiations with the city police, custodians of the contraband. An agreement was reached whereby "no charges would be filed" if the Stipetichs would cooperate with the police concerning the source of the seized narcotics. Majority opinion at 608. Defendants promptly cooperated.

In the meantime, the Allegheny County Police filed a criminal complaint with the Allegheny County District Attorney's

office. The district attorney began his prosecution of the case, but, much to his surprise, the city police had agreed that "no charges would be filed" against defendants. The majority of this Court now holds that the "contract" between the city police and defendants must be specifically enforced against the district attorney. In doing so, the majority "deem[s] unnecessary, to the disposition of this case, the exploration of whether 'the police' as an entity, have authority to enter into non-prosecution agreements." Majority opinion, at 608. Despite this statement, by enforcing the "contract" against the district attorney, the majority effectively holds that the police have the authority to enter into these agreements. So long as defendants and their lawyers (who may be ex-judges and former United States Attorneys) are induced by the police to believe that the officers have the authority to bind the district attorney, the non-prosecution agreement is enforceable. This result is potentially ruinous to the orderly administration of justice.

As Judge Popovich's dissent notes, a large body of caselaw recognizes that the district attorney has wide discretion in deciding whether to file charges against a defendant pursuant to a private criminal complaint.

> In capacity as the Commonwealth's attorney, the district attorney has traditionally fulfilled the obligation of investigation and prosecution of crime by initially evaluating complaints to determine whether a charge should be brought against a suspect. "A district Attorney has general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case."

*Petition of Piscanio*, 235 Pa.Super. 490, 494, 344 A.2d 658, 660 (1975) (citation omitted). Because the district attorney is an elected official entrusted with conducting the criminal litigation of the county on behalf of the electorate, a court should be wary of impinging on that discretionary power:

> [The] discretionary power of the District Attorney in determining whether prosecution shall be commenced or main-

tained may well depend on matters of policy wholly separate and apart from the existence or non-existence of probable cause. For this reason, the courts have been wary of interfering with or attempting to supervise the District Attorney in the exercise of his discretion in controlling criminal prosecutions.

*In re Wood*, 333 Pa.Super. 597, 602, 482 A.2d 1033, 1036 (1984).

The thrust of the cases cited by Judge Popovich's dissent, however, concerns whether, on appeal, a private complainant may win reversal of a district attorney's decision to not approve the complaint. In this case, however, the issue is whether the district attorney may be stripped of this decision-making power, in cases involving the police as well as private complainants, before ever having the chance to exercise it. I am of the position that our Legislature has provided the answer. Neither a private complainant, a policeman, nor a court may usurp this power.

A district attorney holds an office created solely by statute. *Commonwealth v. New York & Pennsylvania Co.*, 378 Pa. 359, 106 A.2d 239 (1954). His or her duties are prescribed by our Legislature:

The district attorney *shall sign all bills of indictment* and *conduct in court all criminal* and other *prosecutions*, in the name of the Commonwealth, or, when the Commonwealth is a party, which arise in the county, and perform all the duties which now by law are to be performed by deputies attorney general, and receive the same fees or emoluments of office.

16 Pa.C.S. § 4402(a).

By using the phrases "shall sign all bills of indictment" and "conduct in court all criminal prosecutions," the Legislature has clearly indicated an intent that the district attorney be solely responsible for signing a bill of indictment that will begin formal prosecution of a criminal defendant in the Commonwealth. *See* 1 Pa.C.S.A. § 1901. Indeed, our Supreme Court has held that the district attorney may not constitutionally agree to divest himself or herself of any duty attendant to

the elected office of district attorney. *Smith v. Gallagher,* 408 Pa. 551, 185 A.2d 135 (1962). No exception to the statute exists which allows a municipal police officer to make a bargain that strips the district attorney's power to prosecute a case in court. The majority's holding, however, creates such an exception.

Police officers should not be entitled to make a bargain which essentially divests the district attorney of the power to decide whether a case should be prosecuted to finality. Police officers are not privy to the reasons behind a district attorney's decision to prosecute. This Court should not sanction a police practice which effectively places the power to make policy decisions in their hands. This is especially so when our Legislature has provided that the district attorney is the public officer solely responsible for that duty.

It is my opinion that we need to look no further than the statute to conclude that the district attorney should be entitled to prosecute this case. If the Legislature is inclined to impose prosecutorial decision-making authority upon a public official other than the district attorney, then so be it. Until that day, however, judicial fiat should not entitle any person, either by express language or implicit effect, to divest the district attorney of the power to prosecute a case.

The majority's decision, however, does not have its genesis in a concern for the duties and powers of the district attorney. Rather, its holding incorporates principles of fairness to the defendant. The majority cites *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), for the proposition that the prosecutor should be held to the letter of the bargain: "when a plea rests in any significant part on a promise or agreement by the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433. In *Santobello,* the facts demonstrated that during defendant's prosecution, one prosecutor made a plea agreement with defendant, but a different prosecutor assigned to the case failed to follow it. The Supreme Court indicated that specific performance might be appropriate, since "[t]he staff lawyers

in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done." *Id.* As one can plainly see, the prosecutor's office in this case made no promise, no inducement, and had no knowledge that a deal had been struck. In fact, the district attorney in a Pennsylvania county should have no concern that the police might strike a deal without his knowledge since it is beyond question that in this Commonwealth, the police cannot make such a bargain.

The remedy for a violation of defendants' constitutional rights is suppression of evidence unconstitutionally procured. While Judge Popovich's reliance on the Michigan and Massachusetts cases is persuasive, I see no need to leave the jurisprudence of this Commonwealth to provide a remedy. Our Supreme Court has held that "[a] confession induced by a promise of immunity from a person in apparent authority to perform the promise is involuntary . . . A fortiori, a waiver of rights cannot be considered voluntary where it is induced by promises of immunity from such a person." *Commonwealth v. Peters*, 473 Pa. 72, 86, 373 A.2d 1055, 1062 (1977). In *Peters*, the Supreme Court ordered the suppression of incriminating statements made by a defendant after a detective employed by the district attorney's office told him that "the most that would happen to him would be that he would be picked up or held as a witness on dollar bail." *Id.* at 78, 373 A.2d at 1058. Likewise, this Court has upheld suppression of physical evidence and statements given as a result of an improper police promise not to charge defendants with the mandatory five-year weapons enhancement under the sentencing guidelines. *Commonwealth v. Elslager*, 349 Pa.Super. 217, 502 A.2d 1354 (1986). We stated in *Elslager*:

> Here, as indicated, it was the police who originally attempted to exercise the discretion in invoking the five year mandatory sentence provisions. The mandatory sentence procedure is not a matter for the police in charging an offense. "Section 9712 applies only in the event the defendant is convicted of one of the offenses numerated therein and thus relates solely to the sentencing proceedings." As

a result, the [defendant's] waiver of their privilege of self-incrimination was not knowingly, intelligently and voluntarily made. The statements of the [defendants] were therefore involuntary.

*Id.* at 226, 502 A.2d at 1359 (citation omitted).

I see no reason why the exclusionary rule should not apply to afford defendants relief upon an independent showing that their constitutional rights were violated. Neither *Peters* nor *Elslager* give any indication that the district attorney in those cases might be bound by the improper police promises. Indeed, if the district attorney is bound to the letter of every improper promise a police officer makes, the exclusionary rule as a remedial device becomes unnecessary. More importantly, our settled system of the administration of justice will be sent into utter chaos.

Therefore, I would reverse the order of the trial court dismissing the action against defendants. At the proper juncture, defendants may make a motion to suppress any confessions, statements, or physical evidence obtained by the police in an unconstitutional manner. This remedy puts defendants in the same position they would have been had no improper conduct occurred. At the same time, we would not compromise the district attorney's discretion, and duty, to decide whether prosecution of these defendants will serve the public good. Any other remedy, in my opinion, is an abuse of discretion.

I respectfully dissent.

ROWLEY, President Judge, joins.

POPOVICH, Judge, dissenting.

There are sixty-eight duly elected prosecutors in our Commonwealth, one for each of our counties and one Attorney General. Heretofore over the decades, it was assumed that only they possessed the discretion to bring forth prosecutions and enter into bargains with arrestees.

Suddenly, surely to the jolting surprise of these sixty-eight, the legislature, the municipal, county and state executive

branches of government and to at least some members of the judiciary, the majority has now by judicial fiat endowed untold thousands of police throughout this Commonwealth with this sensitive, fundamental power.

Therefore, I cannot join in the Majority's decision to uphold the lower court's grant of the Motions to Dismiss the criminal complaints issued by the District Attorney of Allegheny County against the appellees/George & Heidi Stipetich.

The facts are undisputed: An informant gave information to the City of Pittsburgh Bureau of Police resulting in the securement of a warrant to search the appellees' home in Upper St. Clair, a suburb outside of the city limits but within the jurisdictional confines of Allegheny County.

The search of the appellees' residence was conducted with the assistance of the Allegheny County Police Department on November 13, 1990, and netted the Pittsburgh police suspected drugs, drug paraphernalia and non-drug items. Prior to any charges being lodged, the appellees' attorney contacted the supervisor (Sergeant Thomas) of the two Pittsburgh police officers who were the affiants on the warrant. He made inquiry regarding the intent of the police, i.e., would charges be filed.

Sergeant Thomas advised counsel that the items seized tested positive for cocaine and the police department was evaluating what, if any, additional action would be taken because of the other items seized. This exchange was followed by a continuing dialogue in which counsel for the appellees questioned the viability (premised upon his experience as a prosecutor for the United States Attorney's Office, defense counsel and former judge) of prosecuting the appellees. Finally, counsel for the appellees and Sergeant Thomas "reached an agreement" whereby Mr. Stipetich would cooperate with the Pittsburgh police by disclosing whatever information he knew as to the source of the drugs found at his premises. In exchange, Sergeant Thomas agreed that no charges would be filed.

In compliance with the understanding reached between Sergeant Thomas and counsel for the appellees, a meeting was held on April 13, 1991, wherein Mr. Stipetich answered all questions posed to him by Sergeant Thomas. Some ten months thereafter, the District Attorney of Allegheny County ordered the appellees arrested on criminal complaints filed by the Allegheny County Police Department, one of the agencies present during the initial search of the appellees' residence. Evidence seized formed the basis for complaints.

Motions seeking dismissal of the criminal complaints, charging violations of the Controlled Substance, Drug, Device & Cosmetic Act, were filed and granted, after a hearing, by the court below. The Commonwealth perfected an appeal and claims that the Pittsburgh police did not have the authority to consummate an agreement not to prosecute, a determination this writer believes is *reserved* solely to the District Attorney.

The Office of District Attorney is a constitutionally established position and vests with that official, as chief law enforcement officer, the authority to prosecute criminal cases arising within a geographical area. See Pa. Const. Art. 9, § 4, Act of July 28, 1953, P.L. 723, art. XIV, § 1402, 16 P.S. § 4402(a).[1]

In considering the extent of the district attorney's power, it is important to bear in mind that the district attorney's function is to represent the Commonwealth in criminal prosecutions. *Commonwealth ex rel. Specter v. Freed*, 424 Pa. 508, 228 A.2d 382 (1967). In the capacity of the Commonwealth's attorney, the district attorney has traditionally fulfilled the obligation of investigation and prosecution of crime by initially evaluating complaints to determine whether a charge should be brought against a suspect. "A District Attorney has a general and widely recognized pow-

1. Section 4402(a) reads:
 The district attorney shall sign all bills of indictment and conduct in court all criminal and other prosecutions, in the name of the Commonwealth, or, when the Commonwealth is a party, which arise in the county, and perform all the duties which now by law are to be performed by deputy attorneys general, and receive the same fees or emoluments of office.

er to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to continue or discontinue a case." *Commonwealth v. DiPasquale*, 431 Pa. 536, 540–41, 246 A.2d 430, 432 (1968).

The power granted the district attorney ... is consistent with the authority regularly exercised by that office in deciding whether to initiate or to discontinue prosecutions. *Commonwealth v. Ragone*, 317 Pa. 113, 176 A. 454 (1935); *Commonwealth v. Lord*, 230 Pa.Super. 96, 326 A.2d 455 (1974); Pa.R.Crim.P. 314. The attorney for the Commonwealth is acting in accordance with a recognized duty owed to the people of the Commonwealth ... not only of overseeing the prosecution of crime but also determining when charges should be brought.... [4]

4. The A.B.A. Project on Standards for Criminal Justice, *Standards Relating to the Prosecution Function and the Defense Function* § 3.4 (Approved Draft, 1971), recommends that the decision to institute criminal proceedings be initially and primarily the responsibility of the prosecutor, the attorney for the Commonwealth.

*Petition of Piscanio*, 235 Pa.Super. 490, 344 A.2d 658, 660–61 (1975); see also Commonwealth Attorneys Act, Act of Oct. 15, 1980, P.L. 950, no. 164, § 205, 71 P.S. § 732–205.

It is this writer's belief that affording police officers the unbridled authority to enter into negotiations which terminate prosecutions shifts a constitutionally reposed power from an elected official to an appointed public servant. This is unacceptable.

Those state courts which have dealt with the issue have concluded that the breach of an *unauthorized* agreement with police does not warrant the dismissal of charges brought thereafter by a District Attorney. For example, in *People v. Gallego*, 430 Mich. 443, 424 N.W.2d 470 (1988), the Supreme Court of Michigan, in a case of first impression, was confronted with the question of whether a defendant was entitled to specific performance of a written agreement of non-prosecution executed with federal agents and state police in exchange for assisting in retrieving money used in a drug transaction by the defendant.

The local prosecutor did not feel he was bound by the agreement and, consequently, charged the defendant with drug violations. The lower court granted the defendant's motion to dismiss. On appeal, the Supreme Court of Michigan affirmed the Court of Appeals reversal of the motion to dismiss. In the course of doing so, as herein relevant, the Court wrote:

> We base our decision to deny defendant specific performance on the fact that the police lacked the authority to make a binding promise of immunity or not to prosecute. The case at bar involves a non-plea agreement for which specific performance amounts to preclusion of an otherwise valid prosecution, and the Court has available an alternative remedy short of specific performance, i.e., suppression, which essentially restores defendant to the position he enjoyed prior to making the agreement in question to the police.

> The absence of authority of the police in this matter is significant for several reasons. To begin with, by enforcing the unauthorized promise made to defendant, this Court would undermine the accountability built into the prosecutorial function. Unlike a Michigan State Police officer, the Oakland County Prosecutor is an elected official and thus accountable to the county's electorate for his acts. Since the police possess neither the authority to withhold prosecution nor to grant immunity, no formal system exists by which to check the potentially unbridled discretion the police would possess if allowed to make binding promises precluding prosecution. The potential for abuse seems obvious.

> * * * * * *

> In addition, enforcing the unauthorized promise made by the police to defendant raises the question of the logical limits of the power of the police to control the criminal justice system. If the police may make unauthorized, yet binding promises that preclude prosecution, why could they also not make binding plea bargains or sentence agreements? Thus, in granting defendant specific performance,

this Court would create a dangerous precedent. By doing so, we would implicitly recognize the propriety of allowing non-elected, non-prosecutorial public officials to administer an ad hoc system of criminal justice.

A factor suggesting caution in granting defendant's request for specific performance is the fact that the instant case involves a non-plea agreement for which specific performance amounts to preclusion of an otherwise valid prosecution. To begin with, dismissal of criminal charges as a remedy for alleged police misconduct is a drastic and disfavored remedy. See e.g., *United States v. Blue, supra,* 384 U.S. [251] at 255, 86 S.Ct. [1416] at 1419 [16 L.Ed.2d 510 (1966) ]; *United States v. Rogers,* 751 F.2d 1074, 1076–1077 (CA 9, 1985). In this case, dismissal of criminal charges is even less desirable, however, because it advances no other legitimate interests. With a plea bargain, for example, a defendant may plead guilty to one or more charges in exchange for the dismissal of other charges. By negotiating such an agreement, the prosecution protects the public by guaranteeing the defendant's conviction on at least one offense and promotes the prompt and efficient disposition of criminal cases.

* * * * * *

A factor which underlies our decision to deny defendant's request for specific performance is the presence of an alternative remedy which essentially restores defendant to the position he enjoyed prior to making the agreement in question with the police.

* * * * * *

In other words, specific performance is not required to restore defendant to the position he enjoyed prior to making the agreement in question with the police. Exclusion of the buy money and suppression of the written agreement, obtained in alleged violation of defendant's Fourth and Fifth Amendment rights, respectively, correct any prejudice suffered to date by defendant. As for defendant's contention that statement by the [prosecution] and the Court of Appeals have stripped him of his constitutional right to a

presumption of innocence, we cannot agree. Our decision to deny defendant's request for specific performance is not an adjudication of defendant's guilt; we properly leave that determination to the trial court. Instead, our decision rests solely on the legal and policy ramifications of specific enforcement of unauthorized, non-plea agreements made by the police, such as in the case at bar, not on any assumptions about defendant's ultimate guilt or innocence.

Since suppression or exclusion cures defendant's detrimental reliance, specific performance is not necessary to return defendant to the position he enjoyed prior to making the unauthorized, non-plea agreement at issue in this case.

424 N.W.2d at 473–475 (Footnotes omitted). Accord *Commonwealth v. St. John,* 173 Mass. 566, 54 N.E. 254 (1899).

Instantly, we have a scenario in which the District Attorney of Allegheny County was *never* contacted prior to or during the "continuing" discussions had between Sergeant Thomas of the Pittsburgh police and counsel for the appellees. In fact, implicit in the testimony of counsel for the appellees is the belief that the Pittsburgh police had the "apparent authority" [2] to finalize any deal which would insulate his clients from prosecution. See RR. 61 ("I assumed that [Sergeant Thomas] communicated with whomever he was required to who might have been his superior before accord was reached and the deal was consummated.")

Yet, nowhere in the record is there any indication that the District Attorney's office, *as a matter of course,* permitted the Pittsburgh police to act as extensions of or on behalf of the prosecutor by making binding agreements of which he knew

---

2. The Restatement (Second) of Agency, § 8 (1958) defines "apparent authority" as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." This type of authority is created "as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, cause the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Id. at § 27. When an agent acts "within his apparent authority" and contracts on behalf of his principal, the principal is liable on the contract. Id. at § 159.

nothing (from inception to consummation). Such conduct by the Pittsburgh police, and joinder by defense counsel, is indicative of a perception of power which has evolved into a practice accepted as *de facto* authority and the practice appears to have become commonplace. See RR. 54–55 (Counsel for the appellees testified that the police enjoyed the last decision-making responsibility; prosecutorial discretion rests first with the arresting officer). This was never the intent of the Legislature in establishing a unified judicial system which has as one of its players the District Attorney, whose role it is to bring violators to justice. *Petition of Piscanio,* supra.

Moreover, the conduct of the Pittsburgh police fosters unaccountability and exposes the criminal justice system to excesses attendant to unchecked authority. See *Gallego,* supra.

This case affords the Court the occasion to clarify the statutory and case law interpreting the authoritative limits of the District Attorney's office *vis-a-vis* the police department, which I consider to counsel against affixing our imprimatur to the lower court's dismissal of the motions to dismiss. Otherwise, the police would be able to usurp unilaterally the exclusive prosecution function of the District Attorney set forth in our constitution, statute and case law. See, e.g., Pa. Const. Art. 9, § 4; 16 P.S. § 4402(a); *Commonwealth v. Johnson,* 507 Pa. 27, 487 A.2d 1320 (1985) (Court may not grant use immunity without consent of prosecutor); *Commonwealth v. Peters,* 473 Pa. 72, 373 A.2d 1055 (1977) (Detective with the District Attorney's office had apparent authority to promise immunity for a confession; non-compliance with inducement entitled defendant to a new trial); *Commonwealth v. Wolf,* 353 Pa.Super. 483, 510 A.2d 764 (1986) (Incrimination statement by defendant, while attempting to secure leniency, admitted at trial when uttered to non-representative of District Attorney's office, i.e., police officer); *Gallego,* supra; *United States v. Roberson,* 872 F.2d 597, 611 (5th Cir.1989) (State immunity agreement did not bind federal prosecutor).

Unlike the Majority, which presumes that the agreement

entered into by the police and the appellees was valid,[3] I find that prohibition of the "deal" under scrutiny here can be gleaned from a combined reading of our constitution, statutes and case law on the subject. Id. For instance, the decision to grant "use" immunity to any witness is reposed in the Attorney General or District Attorney at 42 Pa.C.S.A. § 5947.

Our Supreme Court has interpreted Section 5947 to restrict the grant of immunity to those named public officials because the risk of abuse is substantial. See *Johnson,* supra. The risk of abuse appears no less extant here where, availing *all* police officers the unbridled authority to act unilaterally to enter into binding agreements with defendants, the prosecution's strong interest in trying the appellees for crimes against the Commonwealth is frustrated by the intervention of the police in an area henceforth sacrosant.

Thus, it seems difficult for this writer to reconcile the Legislature's enactment of the "use" immunity statute (reserving that function to the Attorney General and District Attorney), while ignoring and leaving unprotected for police ruse the area of non-prosecutorial deal-striking. In both instances, the path of prosecutorial discretion should not be infringed upon by an unintended participant. If such be the case, the remedy should never swallow the excesses intended to be curbed.

The more appropriate course to pursue in this case, given the unauthorized actions of the police, would be to suppress any information obtained by the authorities. See *Gallego,* supra. However, we have been presented with no insight as to the type of information divulged by the appellee/George Stipetich and whether it is incriminating to the Stipetichs' case.

The issue of remedy becomes pertinent only after the defendant has established a due process entitlement to some form of judicial relief by reason of certain actions taken in

---

3. My finding that the police lack the authority to bind the District Attorney, of necessity, renders unenforceable the agreement between the appellees and the police.

reasonable and detrimental reliance on a governmental promise.

*People v. Manning,* 672 P.2d 499, 512 (Colo.1993). Therefore, I would remand the case to allow an evidentiary hearing to determine whether the information elicited is truly detrimental to the appellees. If such is the case, the information should be suppressed as a consequence of the police's inability to abide by the terms of the agreement. Otherwise, the case should be permitted to proceed through the judicial process unabated. Compare *Gallego,* supra, and contrast *Manning,* supra. The Majority, having decided to pursue a course at odds with that suggested by this writer, prompts this dissent.

I respectfully dissent.

ROWLEY, President Judge, and CAVANAUGH, J., join.