**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Nancy L. CLINE, Appellee.**

Superior Court of Pennsylvania.

Submitted April 15, 2002.

Filed June 6, 2002.

Peter G. Flanigan, Asst. Dist. Atty., Greensburg, for the Com., appellant.

Dennis B. Rafferty, Greensburg, for appellee.

Before: LALLY–GREEN, TODD, and HESTER, JJ.

LALLY–GREEN, J.:

¶ 1 The Commonwealth appeals from the order entered on May 23, 2001, admitting Appellee Nancy L. Cline into the Accelerated Rehabilitative Disposition (ARD) program. In this case of first impression, we must decide whether the trial court abused its discretion by admitting Cline to the program after the Commonwealth revoked its ARD recommendation. We reverse.

¶ 2 The trial court aptly summarized the procedural history of the case as follows:

On or about March 21, 2000, [Cline] was issued numerous citations for cruelty to animals, (Section 551 of the Crimes Code, 18 Pa.C.S. § 5511), which stemmed from her alleged mistreatment of approximately 270 animals at her farm.[1] On October 6, 2000, the parties entered into a tentative agreement for ARD. The parties also agreed to add disorderly conduct (18 Pa.C.S. 5503) counts to the criminal complaint "solely for the purpose of permitting an ARD

disposition." (Notes of Testimony, 5/23/01 (N.T.), at 5.)

On November 16, 2000, the District Attorney issued a criminal information that charged Defendant with twelve counts of cruelty to animals and three counts of disorderly conduct. The next day the Court granted Defendant's motion for a continuance of her case until the next expedited ARD hearing date; and the case was subsequently scheduled for expedited ARD consideration on January 26, 2001. On January 26th, disposition not having been made, the Court placed this matter on the trial list. On March 22, 2001, the matter was again continued at Defendant's request until the next criminal motions court. Finally, a status conference was scheduled for May 23, 2001.

At the May 23rd status conference, the Commonwealth called the case for "an ARD admission" and informed the Court that [the] parties had reached agreement on the Defendant's admission into the ARD program. (N.T. at 2.) The Commonwealth described the terms of the ARD (N.T. at 2–3), which had been memorialized in a tentative written plea agreement dated October 6, 2000. The agreement for ARD included the condition that "rest[itution] [be made] as determined by the Court that would be provided under section 5511(*l*) of the Crimes Code, 18 Pa.C.S. § 5511(*l*)." The parties contemplated that ARD would be granted on May 23rd and that the Court would schedule a hearing to decide the matter of restitution at a later date. After setting forth the terms of the agreement, the attorney for the Commonwealth indicated that the parties were not of one mind on the matter of restitution, and defendant's counsel

---

1. The Commonwealth alleged that the animals on Cline's farm were neglected, malnourished, and living in unsanitary conditions.

responded by stating that [Cline] could not be ordered to pay restitution under Section 5511 if she was admitted to ARD. The Commonwealth then sought to withdraw the offer of ARD, asserting that the Commonwealth no longer recommended this case for the program. (N.T. at 7–8.)

[In short, the Commonwealth was under the impression that: (1) Cline would pay restitution during the course of the ARD program; and (2) the reference to Section 5511($l$) was intended as a guide for determining the amount of restitution at a later hearing. In contrast, Cline held the position that she would not pay any restitution under the ARD program, in part because she signed away ownership of her animals to various nonprofit agencies that took custody of the animals during the course of these proceedings. Cline took the position that she would be required to pay restitution only if she violated the terms of her ARD.]

The Court accepted [Cline] into the ARD program and scheduled a hearing on the question of restitution for June 12, 2001. The Commonwealth then filed a notice of appeal to the Superior Court; and as a result, the restitution hearing has not been held.

Shortly before it filed the appeal, the Commonwealth moved for reconsideration of the Court's order granting [Cline] admission into the ARD program. The Court, after a reconsideration hearing on August 28, 2001, entered an order reaffirming the May 23rd order approving the ARD.

Trial Court Opinion, 10/16/01, at 1–2 (footnote and citations omitted; footnote 1 and fourth paragraph added). The Commonwealth filed a timely Concise Statement under Pa.R.A.P.1925, preserving the issues raised in the instant appeal. The Commonwealth also certified that the order terminated or substantially handicapped the prosecution. *See, Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985); Pa.R.A.P. 311(d); Pa.R.A.P. 904(e).[2]

¶ 3 The Commonwealth raises one issue on appeal:

Whether the trial court may admit the defendant into the ARD program in spite of the prior withdrawal of the ARD offer by the Commonwealth?

Commonwealth's Brief at 4.

¶ 4 The Commonwealth argues that the trial court erred by admitting Cline to the ARD program after the Commonwealth withdrew its recommendation. The trial court took the position that its "jurisdiction attached" during the hearing on May 23, 2001, when the Commonwealth initially recommended the case for ARD admission and set forth the terms of the parties' agreement on the record. Trial Court Opinion, 10/16/2001, at 4. According to the trial court, the Commonwealth could not unilaterally withdraw its ARD recommendation after that point. Rather, once the Commonwealth recommended ARD, it became discretionary with the court as to whether Cline would be admitted to the program.

¶ 5 This Court recently described the nature and purpose of ARD as follows:

**2.** We see no jurisdictional defects with this appeal. A *Dugger* certification "is an uncontestable certification which, in and of itself, precipitates and authorizes the instant appeal." *Commonwealth v. McElroy,* 445 Pa.Super. 336, 665 A.2d 813, 814 (1995), appeal denied, 544 Pa. 610, 674 A.2d 1073 (1996). *See also, Commonwealth v. Stranges,* 397 Pa.Super. 59, 579 A.2d 930, 937 (1990) (Kelly, J., concurring) ("an appeal from an order granting ARD over the Commonwealth's objection is effectively final, even though an order granting ARD with the consent of the Commonwealth and the defendant is deemed interlocutory.")

ARD is a pretrial disposition of certain cases in which the attorney for the Commonwealth agrees to suspend prosecution for an agreed upon period of time in exchange for the defendant's successful participation in a rehabilitation program, the content of which is to be determined by the court and applicable statutes. *Commonwealth v. Lutz,* 508 Pa. 297, 495 A.2d 928, 931 (1985). The impetus behind the creation of ARD was and remains. a belief that some "cases which are relatively minor or which involve social or behavioral problems ... can best be solved by programs and treatment rather than by punishment." Comment to Pa.R.Crim.P. 185. n. 4; *See also Lutz,* at 931.

*Commonwealth v. Gano,* 781 A.2d 1276, 1278 (Pa.Super.2001).

 ¶ 6 It is undisputed that the initial decision to recommend a case for ARD lies solely with the prosecutor. *Lutz,* 495 A.2d at 935. The prosecutor has wide discretion in this recommendation:

[A]bsent an abuse of that discretion involving some criteria for admission to ARD wholly, patently and without doubt unrelated to the protection of society and/or the likelihood of a person's success in rehabilitation, such as race, religion or such obviously prohibited considerations, the attorney for the Commonwealth must be free to submit a case or not submit it for ARD consideration based on his view of what is most beneficial for society and the offender.

*Id.*

 ¶ 7 Once the Commonwealth submits an ARD recommendation, the trial court is vested with the discretion to decide whether to accept the recommendation. *Commonwealth v. Gano,* 756 A.2d 680, 682 (Pa.Super.2000). The trial court's function is not to "rubber stamp" the ARD recommendation; rather, the court is free to come to its own decision as to whether ARD will be beneficial to the defendant and to the community. *Id.*

¶ 8 In the instant case, the critical question is one of timing. Specifically, when does the Commonwealth's discretion to submit a case for ARD yield to the trial court's discretion to approve or disapprove ARD? To answer this question, we first consult the Rules of Criminal Procedure. Rule 310 states that "[a]fter criminal proceedings in a court case have been instituted, the attorney for the Commonwealth may move, before a judge empowered to try court cases, that the case be considered for accelerated rehabilitative disposition." Pa.R.Crim.P. 310.

¶ 9 The procedure for conducting an ARD hearing is as follows. First, the defendant should indicate his understanding of the ARD proceedings, request acceptance into the program, and agree to the terms set forth in Rule 312.[3] Pa. R.Crim.P. 313(A). At that point, the trial court shall hear the facts of the case. Pa. R.Crim.P. 313(A), (B). "This is the first stage at which the judiciary is implicated." *Commonwealth v. Paul,* 383 Pa.Super. 486, 557 A.2d 357, 360 (1989), *appeal denied,* 525 Pa. 633, 578 A.2d 927 (1990). After hearing the facts of the case, the court decides whether to grant or deny ARD.

---

**3.** The court must determine on the record whether the defendant understands that: (1) successful completion of ARD offers the defendant an opportunity to earn a dismissal of all pending charges; and (2) if the defendant fails to complete the program, she waives the appropriate statute of limitations and her speedy trial rights during the ARD enrollment period. Pa.R.Crim.P. 312.

Pa.R.Crim.P. 313(C).[4] "Only after the ARD process has been initiated by the District Attorney and a hearing has been conducted pursuant to Rule [313(B)][5] is the court authorized to act upon the Commonwealth's Motion." *Paul,* 557 A.2d at 360–361.

¶ 10 The Rules of Criminal Procedure and case law interpreting those rules have not addressed the question of whether or when the Commonwealth may withdraw its ARD recommendation. For the reasons set forth below, we conclude that the Commonwealth should be entitled to withdraw its ARD recommendation at any point before the trial court rules on the motion.

¶ 11 "When considering a motion for ARD entry, the trial court is reviewing the district attorney's decision to submit the application." *Gano,* 756 A.2d at 682. If the Commonwealth decides to withdraw the motion, obviously the district attorney has decided not "to submit the application." If the trial court nevertheless considers ARD, the court, in effect, decides to submit the case for ARD against the Commonwealth's wishes.

¶ 12 Such a procedure is not contemplated by the Rules. It is well settled that "[a] trial court may not object if the Commonwealth refuses to submit a case unless the district attorney has abused its discretion by refusing to submit an individual because of his race or religion or some other obviously prohibited consideration. The [Supreme] Court held that a trial judge may not overrule the district attorney and force him to submit a case to ARD for any reason related to the protection of society or the likelihood of a successful rehabilitation." *Commonwealth v. Ayers,* 363 Pa.Super. 232, 525 A.2d 804, 805 (1987). Thus, we are constrained to conclude that the learned trial court impermissibly infringed on the Commonwealth's prosecutorial functions when it forced the Commonwealth to retain its original ARD recommendation and refused to allow revocation.

¶ 13 The instant case provides a compelling illustration of these principles. The record reflects that the Commonwealth recommended ARD based on its mistaken understanding that Cline had agreed to pay restitution as a part of the ARD program. The Commonwealth was particularly concerned about restitution because various nonprofit groups had spent money caring for the animals from Cline's farm. N.T., 5/23/01, at 6. During the ARD hearing, Cline stated unequivocally on the record that she would not agree to pay restitution. *Id.* at 8. As soon as Cline put her position on the record, the Commonwealth withdrew the ARD recommendation. It appears that the Commonwealth would have never recommended ARD if it had known Cline's true position. Since the trial court had not yet ruled on the motion, we see no reason why the Commonwealth should be precluded from exercising its prosecutorial discretion based on a defendant's clear and unequivocal rejection of a condition for the prosecutor's recommendation for ARD. Moreover, nothing in the record suggests that the Commonwealth revoked its recommendation for "obviously prohibited" considerations such as race or religion. *Lutz,* 495

---

4. If the court accepts the case for ARD, the court shall state the conditions of the ARD program. Pa.R.Crim.P. 313(C). If the court does not accept the case for ARD, the court "shall order that the case proceed on the charges as provided by law." *Id.*

5. The *Paul* decision refers to Pa.R.Crim.P. 179(b), which was renumbered as Rule 313(B) effective April 1, 2001.

A.2d at 935. Rather, the Commonwealth withdrew the recommendation based on its position that ARD would be inappropriate if Cline did not agree to pay restitution. This is a permissible consideration, because it reflects the Commonwealth's assessment of "what is most beneficial for society and the offender." *Id.*

¶ 14 For the reasons set forth above, we conclude that the highly regarded trial court abused its discretion by admitting Cline to the ARD program after the Commonwealth had revoked its recommendation.

¶ 15 Order reversed. Remanded for further proceedings. Jurisdiction relinquished.