934 A.2d 693

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**June M. ROBY–SPENCER, Appellant.**

Supreme Court of Pennsylvania.

Argued May 14, 2007.

Decided Nov. 20, 2007.

John Wesley Kocsis, Esq., Kocsis Law Office, Athens, for June M. Roby–Spencer.

Stephen G. Downs, Jr., Esq., Bradford County District Attorney's Office, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

### *ORDER*

PER CURIAM.

The appeal is dismissed as improvidently granted.

Justice BAER files a dissenting statement in which Justice CASTILLE and Justice BALDWIN join.

Justice BAER, dissenting.

I respectfully disagree with the Majority of this Court's decision to dismiss the above matter as having been improvidently granted. In my view, this case raises an important issue of first impression concerning the enforceability of a written agreement executed by a defendant and a district attorney (DA) wherein the defendant agrees to certain sanctions and remedies and, in exchange, the DA agrees to recommend to a court that the defendant be permitted to enter an Accelerated Rehabilitative Disposition (ARD) program.

The facts reveal that on February 28, 2005, Appellant was charged with ten counts each of forgery and theft for failing to make required disposition of funds received in the course of performing her duties as a notary public. During the criminal investigation in this matter, the prosecution engaged in several discussions with defense counsel regarding Appellant's desire to be recommended for the ARD program. Eventually, the parties entered into a written agreement ("the agreement") wherein Appellant agreed to relinquish her notary public license, discontinue her notary business, deposit funds into an escrow account for restitution, and waive her constitutional right to a preliminary hearing. In exchange, the Commonwealth agreed to recommend that Appellant be admitted into the ARD program upon successful completion of the above terms.

Following the parties' agreement, Appellant performed her end of the bargain in reliance on the Commonwealth's promise. However, when Appellant later sought to schedule the matter for an ARD hearing, the DA informed her that he was reneging on her obligation under the parties' agreement.[1] Appellant then filed a petition with the trial court seeking to enforce the agreement, asserting, in substance, that she and the DA had exchanged an offer and an acceptance, and that there had been both consideration and detrimental reliance;

---

1. According to the trial court's unpublished opinion, the Commonwealth did not offer much reason for refusing to uphold its obligation under the agreement, other than stating that the nature of the crimes militated against recommending Appellant for the ARD program.

and that the DA was bound to its contractual obligation. Following a hearing, the trial court agreed with Appellant and granted the requested relief by entering an order directing the Commonwealth to move for Appellant's admission into the ARD program.

Upon appeal by the Commonwealth, the Superior Court reversed the trial court in an unpublished memorandum, citing case law holding that the prosecutor is vested with sole discretion to recommend a defendant for ARD. *See Commonwealth v. Lutz,* 508 Pa. 297, 495 A.2d 928 (1985). However, *Lutz* is obviously distinguishable from the instant case. In *Lutz,* the issue before the Court was whether a party other than the attorney for the Commonwealth can move for a defendant's admission into the ARD program.[2] *Lutz,* 495 A.2d at 932. We held that the discretion for recommending entry into the ARD program lies solely with the prosecution. *Id.* This Court was not asked, nor did we offer an opinion on, the impact of an enforceable written agreement between a DA and a defendant in the context of ARD.

The Superior Court also cited its own decision in *Commonwealth v. Cline,* 800 A.2d 978 (Pa.Super.2002), where it held that the DA may withdraw an ARD recommendation at any point prior to the trial court ruling on the Commonwealth's motion for the defendant's acceptance into ARD. Again, this case is not dispositive of this matter. In *Cline,* the prosecutor and the defendant reached a tentative agreement whereby the prosecutor would recommend ARD if the defendant made restitution payments. *Cline,* 800 A.2d at 979–80. At a status conference, the parties could not reach an agreement on how the restitution payments would be made. Nonetheless, the trial court ordered that the defendant be admitted into the ARD program. *Id.* The Superior Court reversed and held that the Commonwealth was entitled to withdraw its ARD recommendation at any point prior to the trial court accepting

**2.** In *Lutz,* which addressed several related cases, trial courts were ordering prosecutors to consider defendants for the ARD program in DUI cases. In some cases, the courts were actually ordering their admission over the prosecutors' objections.

the recommendation. *Id.* at 982. The ARD agreement in *Cline* was at best tentative, as the parties in that case never reached a meeting of the minds on the all-important question of restitution. Thus, *Cline,* unlike the case at bar, did not involve a completed contract, and a DA's decision to renege thereon.

As the above discussion illustrates, *Lutz* and *Cline* speak to different issues and do not mandate a particular conclusion in this case. Nevertheless, the Superior Court in this case, relying on these cases, concluded that the DA acted within his discretion when he disregarded the agreement because the trial court had not formally accepted his ARD recommendation.

Presently, Appellant asserts that the Commonwealth should be bound to honor its completed contract. In support of her position, Appellant cites Superior Court cases providing that non-prosecution agreements are enforceable. *See Commonwealth v. Ginn,* 402 Pa.Super. 405, 587 A.2d 314, 316–17 (1991) (finding that a prosecutor cannot renege on a validly executed non-prosecution agreement); *Commonwealth v. Stipetich,* 423 Pa.Super. 427, 621 A.2d 606, 608–12 (1993) (finding a formal non-prosecution agreement enforceable where the defendant performed in reliance on agreement), *rev'd,* 539 Pa. 428, 652 A.2d 1294 (1995).[3] Although Appellant acknowledges that the instant case involves an ARD agreement as opposed to a non-prosecution agreement, she contends that these types of agreements are analogous because, in both instances, there are no records of charges against the accused once he or she satisfies certain conditions.

In accordance with all of the above, the impact of an agreement between the DA and a defendant remains an open question in Pennsylvania. In no obvious scenario would a party be permitted to enter into a binding written agreement,

3. Although this Court reversed the Superior Court's decision in *Stipetich,* it did so on the basis that the agreement itself was invalid. *Stipetich,* 652 A.2d at 1295. In that case, police officers had entered into the non-prosecution agreement with the defendant. This Court held that the police did not have authority to bind the DA's office as to whether charges would be filed. *Id.*

18

induce actions in reliance on the agreement, reap the benefits of the agreement, and thereafter renege on the agreement where there is no change in circumstances. For example, in *Commonwealth v. Zuber*, 466 Pa. 453, 353 A.2d 441, 444 (1976), this Court held, with regard to plea bargaining, that "there is an affirmative duty on the part of the prosecutor to honor any and all promises made to a defendant in exchange for the defendant's plea." *See also Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ("... a constant factor is that when a plea results in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). See also, *Ginn* and *Stipetich*, discussed above.

I believe the Superior Court's decision herein is worthy of this Court's full consideration. The question now before us is not what a majority of this Court would decide, but whether it will undertake its normal comprehensive and thoughtful process, and decide something on this important issue.

Justice CASTILLE and Justice BALDWIN join this dissenting statement.